# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

BRENT JENSEN,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant-Appellee.

No. 05-4012

## ORDER
Filed February 2, 2006

Before **LUCERO**, **ANDERSON**, and **BRORBY**, Circuit Judges.

Appellee's motion to publish the Order and Judgment dated December 14, 2005, is granted. The published opinion will be filed nunc pro tunc to December 14, 2005. A copy of the published opinion is attached.

      Entered for the Court
      Elisabeth A. Shumaker, Clerk of Court


      By:
          Amy Frazier
          Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

December 14, 2005

Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRENT JENSEN,

       Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant-Appellee.

No. 05-4012

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:03-CV-837-TC)

---

Submitted on the briefs:

Ward Harper, Salt Lake City, Utah, for Plaintiff-Appellant.

Paul M. Warner, United States Attorney, Salt Lake City, Utah, Deana R. Ertl-Lombardi, Regional Chief Counsel, Debra J. Meachum, Assistant Regional Counsel, Social Security Administration, Denver, Colorado, for Defendant-Appellee.

---

Before **LUCERO**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Claimant Brent Jensen appeals from the district court's order affirming the decision of the Commissioner of Social Security to deny his request for social security benefits. We have jurisdiction under 28 U.S.C. § 1291, and **AFFIRM**.[*]

Jensen applied for disability insurance benefits on May 1, 2000, alleging disability since June 1, 1998, due to dizziness, disequilibrium, and back pain. He was fifty-eight years old as of June 30, 1998 – the date he was last insured. Jensen's initial request for disability benefits was denied. After a de novo hearing at which Jensen appeared pro se, the Administrative Law Judge (ALJ) affirmed the denial of his application. Because the Appeals Council ultimately denied his request for review, the decision of the ALJ became the final decision of the Secretary. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). Jensen filed this action in federal court, seeking review of the Secretary's decision. The case was referred to a magistrate judge, who concluded that Jensen's case should be remanded for an award of benefits if appropriate. The district court disagreed and affirmed the Secretary's decision.

We review the Commissioner's decision to determine "whether [her] findings are supported by substantial evidence in the record and whether [she]

---

[*] The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).

applied the correct legal standards." Emory, 936 F.2d at 1093. The "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

In this case, the ALJ reached the fifth step of the familiar five-step evaluation process, see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988), concluding that Jensen could perform a significant number of jobs in the national economy. As of his date last insured, Jensen was fifty-eight years old, had a high school education, and had worked as a supervisor for Western Union for six years and as an automobile salesman for two and one-half years. The ALJ concluded that Jensen retained the capacity to perform less than the full range of sedentary work, but that his skills were transferable to a significant number of jobs.

At fifty-eight years of age, Jensen was a person of "advanced age" under the Commissioner's regulations. See 20 C.F.R. § 404.1563(e). The Commissioner must overcome a higher burden at step five to deny benefits to claimants of advanced age. Emory, 936 F.2d at 1094. The regulations state: "If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an

adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work. . . ." 20 C.F.R. § 404.1568(d)(4). "Accordingly, it is not enough that persons of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired skills from their past work that are transferable to skilled or semi-skilled work." Emory, 936 F.2d at 1094 (quotation omitted).

The ALJ concluded that Jensen is limited to sedentary work and is further limited to less than a full range of that type of work due to his inability to sit more than forty-five to sixty minutes without changing positions and his inability to walk more than ten to fifteen minutes at a time and two hours during an eight-hour day. Because Jensen is of advanced age and is limited to sedentary work, an additional regulation concerning transferability of skills comes into play: "If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4); see also 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.00(f). Section 4.c. of Social Security Ruling 82-41 further defines transferability of skills for persons of advanced age: "In order to establish

transferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." 1982 WL 31389 at *5. The ruling further provides that when the ALJ determines that job skills are transferable, he or she must provide findings of fact to support that decision and must identify the acquired job skills and the positions to which those skills are transferable. Id. at *7.

The vocational expert (VE) who testified at the hearing before the ALJ determined that Jensen retained skills from his job as an automobile salesman that would transfer to other jobs in the national economy with very little if any vocational adjustment in terms of work processes, work settings, or tools. The VE also determined, however, that more than very little adjustment would be required for transfer to a different industry. With regard to Jensen's past job as a supervisor for Western Union, the VE found very little if any vocational adjustment would be required only for the criteria of work processes and tools. In summary, the VE concluded that overall Jensen could perform the jobs identified with very little if any vocational adjustment. Relying on this evidence, the ALJ concluded that Jensen was not disabled.

On appeal, Jensen argues that this evidence is inadequate to support a finding that he is not disabled because all four of the criteria in § 404.1568(d)(4) need to be satisfied in order to reach that conclusion. He further argues that there is no regulatory basis upon which an "overall" adjustment should be considered.

Jensen acknowledges that there is no authority on point supporting his position requiring that all four criteria of § 404.1568(d)(4) be met before skills can be deemed transferable. The district court concluded that "[t]he proper interpretation of the transferability rule as it applies to those of advanced age limited to sedentary work is that the claimant must experience very little adjustment in more than one of the criteria, and overall, the adjustment must be very little." Further, the court reasoned that, because the regulation is written in the disjunctive, Jensen's argument would simply read the "or" out of the regulation.[1] Noting that the agency has had at least four years to change the "or" in the regulation to an "and" and has not done so, the court similarly refused to take that step. The Commissioner urges us to affirm this conclusion, and her "interpretation must be given controlling weight unless it is plainly erroneous or

---

[1]    Under the regulation, skills are transferable only if "the sedentary work is so similar to [the claimant's] previous work that [the claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings,  or the industry." 20 C.F.R. § 404.1568(d)(4)(emphasis added).

inconsistent with the regulation." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994).

Appellant fails to advance any argument rebutting the reasoning of the district court based on the disjunctive syntax of the regulation. Further, we find no error in the ALJ's reliance on the VE's opinion that Jensen would require very little adjustment overall to perform any of the identified jobs. The idea that an ALJ is not allowed to make an overall estimation of a claimant's ability to transfer skills to new employment is unsupported by case law and contrary to the regulations. See, e.g., 20 C.F.R. § 404.1569 (requiring agency to "give full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations" where the applicability of the rules in Appendix 2 are at issue); see also 65 Fed. Reg. 17994 (commentary from agency rulemakers at the time of amendment to § 404.1568 clarifying that rules and explanatory text are intended to provide guidance for consideration of other vocational factors such as age, education, and work experience gleaned from other regulations). Because the Commissioner's interpretation is neither "plainly erroneous [n]or inconsistent with the regulation," Thomas Jefferson Univ., 512 U.S. at 512, and because Jensen's alternative reading is contradicted by the plain language of the regulation, we affirm the district court's resolution of this issue.

Jensen argues that the ALJ inadequately developed the vocational evidence at step five of the sequential evaluation. We disagree.

At the hearing before the ALJ, both Jensen and the VE testified as to his past work history and the nature of the possible jobs he could still do. Jensen's past relevant work included several years as a district manager for Western Union with responsibility for operations in Utah, Idaho, Montana, and Wyoming, and two and one-half years as an automobile salesman. As part of the Western Union job, Mr. Jensen had hiring and firing responsibilities, supervisory responsibilities over an office manager, had done some payroll work prior to the advent of computers, reviewed profit and loss and sales statements, participated in end-of-year budgeting, and accessed and reviewed financial data from a laptop. Because the VE indicated that she was aware of the job duties of a salesman, the ALJ did not question Jensen about the specifics of that job.

The VE categorized Jensen's job as a Western Union supervisor as light and skilled, or at least semiskilled, with a specific vocational preparation requirement (SVP) of at least four. She thought the job was more supervisory than managerial because Jensen was not "really involved in . . . decisions or business planning." The VE rated the automobile salesman job as light and semiskilled with an SVP of four.

When asked whether any of the skills acquired in his two previous jobs would transfer to sedentary work, the VE identified several skills centering around business operations that she found to be compatible. She testified that Jensen's transferrable skills included:

> communicating with customers, scheduling appointments, providing information. Some type of basic clerical work with simple record keeping, logging names, addresses, different things like that. I would say also using basic office equipment, such as the telephone, the computer, [] probably a copy machine and those types of things that are basic to operating a business.

Among the people skills that would transfer, the VE identified information giving, making judgments, providing supervision, providing information in a persuasive manner, taking orders, helping individuals decide on a product, explaining the benefits of a product, and convincing an individual to choose a certain product.

Based on these factors, the VE concluded that Jensen could work in jobs using the same machines and people skills he had formerly used. She identified three jobs as examples of possible jobs which would comport with Jensen's need for a limited range of sedentary work and be semiskilled. Those included information clerk, telephone solicitor, and reservation clerk. The ALJ then asked the VE to assist her in categorizing the vocational adjustment required of Jensen based on his transferable skills as either "very little if any vocational adjustment" or "more than very little."

As noted above, the VE testified that, in terms of work processes, the adjustment would be very little; that work setting adjustment would be more than very little from the Western Union job and very little from the automobile sales job; more than very little in terms of the industry, and very little in terms of tools. The ALJ then asked "[s]o overall, would you say that these jobs would fit the criteria of very little if any vocational adjustment?" The VE replied, "[o]verall, I would say yes."

In expanding on his argument regarding failure to develop the record, Jensen argues that the ALJ failed to ask whether skills were transferable with little or no vocational adjustment; failed to ask whether new jobs were similar to Jensen's previous work; failed to develop evidence showing that Jensen would have an advantage over unskilled workers; failed to differentiate between skills from previous work and skills needed in the new jobs, and failed to inquire about discrepancies between the jobs identified by the VE and the job descriptions contained in the DOT. We disagree with this characterization of the record and find substantial evidence supports the ALJ's decision.

As is obvious from the record cited above, the ALJ carefully led the VE through the regulatory requirements for transferability of skills for a person of advanced age. She also solicited information both from the VE and from Jensen about the characteristics of his former jobs. As for job similarity, the VE testified

that Jensen's skills centering around business operations, clerical work, use of basic office equipment as well as basic "people" skills were skills acquired from previous work that would be compatible with the new jobs identified. The jobs identified by the VE all were semiskilled with an SVP of at least three, meaning that they were more demanding than unskilled work and would take over one month and up to and including three months of specific vocational preparation to learn. See Dictionary of Occupational Titles (DOT), Vol. II, App. C at 1009. Because substantial evidence supports the fact that Jensen has transferable skills he can apply to these positions, he has an advantage over younger unskilled workers. See Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001). Jensen also contends, citing Haddock v. Apfel, 196 F.3d 1084, 1089 (10th Cir. 1999), that the ALJ did not resolve discrepancies between the testimony of the vocational expert and the DOT. The record does not bear out Jensen's contentions. The vocational expert testified that, under the ALJ's hypothetical, Jensen could perform the sedentary semiskilled positions of information clerk, telephone solicitor, and reservation clerk. There are no unexplained conflicts between the vocational expert's testimony and the DOT, and Jensen does not identify any.

After examining the record as a whole, we are persuaded that the Commissioner's decision is supported by substantial evidence and that the correct

legal standards were applied.  The balance of Jensen's "arguments to the contrary constitute[] an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation we must decline."     Hackett v. Barnhart  , 395 F.3d 1168, 1173 (10th Cir. 2005).  The Commissioner met her step-five burden of proving that there are sufficient jobs in the national economy for a hypothetical person with Jensen's impairments.  There is no reversible error in the ALJ's decision.

The judgment of the district court is AFFIRMED.