**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STEVE J. MAYNARD,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 06-4134
(D.C. No. 2:04-CV-775-DB)
(D. Utah)

ORDER AND JUDGMENT[**]

Before **O'BRIEN** and **BRORBY**, Circuit Judges, and **BROWN**,[***] District Judge.

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for Jo Anne B. Barnhart as appellee in this action.

[**]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[***]    The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

Plaintiff Steve J. Maynard appeals from the district court's judgment affirming the final decision of the Commissioner of Social Security denying him disability insurance benefits (DIB) and supplemental security income (SSI) benefits under Title II and Title XVI of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. §§ 405(g) and 1383(c)(3). After "review[ing] the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in light of the entire record and to determine whether he applied the correct legal standards," *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997), we reverse and remand with instructions to remand to the Commissioner.

## I.

While working as a member of the Oklahoma National Guard on February 2, 2002, Mr. Maynard was struck on the shoulder and back by support beams that dislodged from a garage ceiling. Shortly thereafter he was diagnosed with degenerative disc disease in his lower back. Based on that condition, he filed applications for DIB and SSI benefits with a protective filing date of October 22, 2002, and an onset date of June 11, 2002. After his applications were denied initially and upon reconsideration, he received a hearing before an administrative law judge (ALJ), who applied the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step process).

At step one, the ALJ found that Mr. Maynard was not engaged in any substantial gainful activity. At steps two and three, the ALJ found that Mr. Maynard has discogenic and degenerative disorders of the back, obesity, and hyperalimentation that are severe but not severe enough to meet or equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listings"), stating that Mr. Maynard "has no loss of function and he can ambulate effectively without assistive device." Aplt. App. at 26. Proceeding to step four, the ALJ found that Mr. Maynard retains the residual functional capacity (RFC) to perform sedentary work[1] and therefore could not return to his past work as a graphic designer, which required heavy lifting as he performed that job.

Turning to step five, the ALJ applied the Medical Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 (the "grids"), which direct a conclusion of "not disabled" when findings as to certain vocational characteristics and a claimant's RFC coincide with the criteria of a particular rule under the grids, *id.* § 200.00(a). The ALJ found that Mr. Maynard, at age twenty-nine, was

---

[1]     The exertional requirements of sedentary work as defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

a "younger person," *see* 20 C.F.R. §§ 404.1563(c), 416.963(c), with a "high school" education, *id.* §§ 404.1564(b)(4), 416.964(b)(4), and transferable skills, *see id.* §§ 404.1568(d), 416.968(d). These findings, which Mr. Maynard does not challenge, in combination with the ALJ's finding that Mr. Maynard retained the RFC to perform a full range of sedentary work, Aplt. App. at 29, dictated a finding that he was not disabled under Rule 201.29 of the grids, Aplt. Opening Br., second unlabeled attachment at 8, ¶ 12.[2]

The Appeals Council denied review, making the ALJ's May 27, 2004, decision the Commissioner's final decision. *See Jensen v. Barnhart*, 436 F.3d 1163, 1164 (10th Cir. 2005). The district court affirmed the Commissioner's decision, and Mr. Maynard appealed.

## II.

Mr. Maynard raises four issues on appeal: (1) the ALJ erred by failing to state what weight he gave to the opinions of Mr. Maynard's treating physicians or by rejecting those opinions without explanation; (2) substantial evidence does not support the ALJ's RFC finding, and the ALJ gave an improper hypothetical to the vocational expert (VE) at the hearing; (3) the ALJ referred to an outdated Listing at step three; and (4) the ALJ's adverse credibility finding is plagued by legal error and not supported by substantial evidence. Because the first two issues are

---

[2]    We must refer to the last page of the ALJ's decision by reference to the copy attached to Mr. Maynard's brief because that page is not included in the Appendix.

related, we address them together before turning to the others. Additionally, Mr. Maynard contends that the Commissioner impermissibly urges affirmance on grounds not relied on by the ALJ in connection with some of the foregoing issues.

A.

Mr. Maynard argues that the ALJ either failed to state what weight he gave to the opinions of treating and examining physicians or rejected those opinions without explanation. Specifically, he points to the medical opinions of Dr. Henthorn, Dr. Loftus, Dr. Carl, Dr. White, and the National Guard Medical Board. We agree with Mr. Maynard's observation that the ALJ did not state what weight, if any, he gave to the opinions of each of the medical sources catalogued in his decision. As to most of the medical opinions, however, this does not amount to legal error. An ALJ is required to "review all of the evidence relevant to [a] claim" and "make findings about what the evidence shows." 20 C.F.R. §§ 404.1527(c), 416.927(c). "If all of the evidence we receive, including all medical opinion(s), is consistent, and there is sufficient evidence for us to decide whether you are disabled, we will make our determination or decision based on that evidence." *Id.* §§ 404.1527(c)(1), 416.927(c)(1). "If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have." *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

-5-

The ALJ reviewed all of the medical evidence in his decision. The medical opinions contained in the record are, for the most part, in agreement that Mr. Maynard has moderately severe to severe degenerative disc disease that causes severe pain and limits the amount he can lift as well as his ability to bend, twist, and sit, and dictates that he should not be exposed to prolonged vibrations. *See, e.g.,* Aplt. App. at 103, 112, 114, 135, 140, 159. Thus, the mere fact that the ALJ did not assign weights to each of the consistent medical opinions was not error.

In reaching his RFC finding that Mr. Maynard has the ability to perform sedentary work, however, the ALJ specifically stated that he had "considered the opinions of the State agency medical consultants . . . and generally agrees with the determinations made by the State agency (Social Security Ruling 96-6p)." Aplt. App. at 27. In early 2003, those consultants completed a "check box" RFC assessment form without examining Mr. Maynard and, among other things, opined that he could sit, with normal breaks, for six hours in an eight hour work day. *Id.* at 137. This opinion appears to conflict with the opinion of Dr. Bell, who saw Mr. Maynard in February 2004 as part of ongoing treatment by the National Guard Medical Evaluation Board. Dr. Bell reviewed Mr. Maynard's history of prior examinations and performed a physical examination. *See id.* at 165-66. He noted that Mr. Maynard was unable to sit for prolonged periods to operate a computer as part of his military duties, and he included "[n]o prolonged sitting"

in his duty restrictions. *Id.* at 167.[3]  The ALJ specifically acknowledged the latter statement in his decision, *see id.* at 26, yet he failed to explain why he did not give it greater weight than the opinion of the nonexamining state-agency consultants that Mr. Maynard could sit for six hours out of an eight-hour workday.  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (providing that more weight generally is given to examining sources than nonexamining sources).  Nor did he explain the apparent inconsistency between the two opinions.  *See* Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2, *4 (ALJ must consider factors such as consistency with other medical opinions in deciding what weight to accord RFC assessment by state-agency consultants, which is treated as medical opinion from nonexamining source).

These deficiencies are significant because the ALJ specifically found that Mr. Maynard's RFC to perform the full range of sedentary work, in connection with his vocational characteristics, required a finding that he was not disabled under Rule 201.29 of the grids.  *Id.* at 29; Aplt. Opening Br., second unlabeled attachment at 8, ¶ 12.[4]  But in order to rely on the grids "to direct a conclusion of

---

[3]  Another document in the record dated December 6, 2003, which recommended separation from Guard duty, also indicates a prohibition on prolonged sitting.  Aplt. App. at 173.

[4]  Although both parties reference the ALJ's single sentence summarizing the VE's testimony that Mr. Maynard could perform the job of computer operator and that there were 8,000 such jobs regionally and 73,000 nationally, *id.* at 28, the ALJ ultimately relied on the grids in making his step-five finding.  We therefore

(continued...)

'not disabled,' the individual must be able to perform the full range of work

administratively noticed by a rule. This means that the individual must be able to

perform substantially all of the strength demands defining the sedentary level of

exertion . . . ." Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *4 (SSR 96-9p); *see*

*also* Soc. Sec. Ruling 83-11, 1983 WL 31252, at *2 (explaining that for

application of the grids, "RFC is defined by criteria that establish exertional

capability for a full range (all or substantially all) of the work existing at the level

of exertion in question").

Sitting is one of the exertional demands of sedentary work, *see* SSR 96-9p,

1996 WL 374185 at *5, and its relationship to the full range of sedentary work is

described as follows:

> In order to perform a full range of sedentary work, an individual
> must be able to remain in a seated position for approximately 6 hours
> of an 8-hour workday, with a morning break, a lunch period, and an
> afternoon break at approximately 2-hour intervals. If an individual is
> unable to sit for a total of 6 hours in an 8-hour workday, the
> unskilled sedentary occupational base will be eroded.

*Id*. at *6. Thus, a medically supported prohibition on prolonged sitting could

preclude the ALJ's reliance on the grids to direct a finding of "not disabled" if it

means that Mr. Maynard cannot sit for a total of six hours in an eight-hour

[4](...continued)
analyze the ALJ's failure to explain why the opinion of the state-agency
consultants was entitled to more weight than Dr. Bell's opinion as it pertains to
reliance on the grids.

workday; such a restriction means that he would not be able to perform the full range of sedentary work. Therefore, the ALJ's failure to reconcile Dr. Bell's prohibition on prolonged sitting, which he specifically acknowledged, with the opinion of the state-agency consultants that Mr. Maynard could sit for six hours out of an eight-hour workday fatally undermines his RFC finding, *see Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"), as well as his correlative use of the grids to direct a disability finding.

When a claimant cannot perform the full range of sedentary work such that the grids do not direct a disability finding, SSR 96-9p states that the grids "must be used as a framework for considering the extent of any erosion of the sedentary occupational base." SSR 96-9p, 1996 WL 374185, at *4. In such circumstances, the ALJ must make a judgment as to "the impact of the limitations or restrictions on the number of sedentary unskilled occupations or the total number of jobs to which the individual may be able to adjust, . . . including any transferable skills or education providing for direct entry into skilled work." *Id.* at *5. If the ALJ "finds that the individual is able to do other work, the [ALJ] must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." *Id.*

The ALJ did not specifically state that he was using the grids as a framework here, but he did reference the VE's testimony that Mr. Maynard could perform the job of computer operator, a skilled position, and that there were 8,000 such jobs regionally and 73,000 nationally. To the extent that this reference could be construed as the analysis required under SSR 96-9p for using the grids as a framework (and assuming Mr. Maynard cannot perform the full range of sedentary work), two problems arise. First, the ALJ stated to the VE that Mr. Maynard "appears to be having a lot of trouble just sitting," then gave the following hypothetical to the VE: "What would be a good job where you could sit or stand with [Mr. Maynard's] skill levels?" Aplt. App. at 228. These two statements imply that Mr. Maynard would be able to perform a sedentary job with a sit-stand option. Although the ALJ does not mention such an option in his decision, it could, if appropriate for Mr. Maynard, permit him to perform sedentary work:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of sedentary work will be eroded. The extent of the erosion will depend on the facts in the case, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.*

SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). The ALJ's hypothetical does not comply with the emphasized language in the foregoing quotation because

-10-

it provided no specifics to the VE concerning the frequency of any need

Mr. Maynard may have to alternate sitting and standing and the length of time

needed to stand. The RFC in the ALJ's hypothetical is therefore flawed as it

pertains to a sit-stand option, and the VE's response is not a reliable basis for

analyzing the erosion of the unskilled sedentary occupational base or the total

number of jobs Mr. Maynard can perform, including his ability to transfer directly

into a skilled position such as computer operator.

The second and perhaps more troubling problem with trying to salvage the

ALJ's step-five finding based on the VE's testimony is that the VE identified the

computer-operator job listed as # 213.362-010 in the *Dictionary of Occupational*

*Titles* (*DOT*)[5] to be "sedentary," Aplt. App. at 229, when in fact the *DOT*

classifies it as "light," *see DOT* # 213.362-010. This error may explain why the

ALJ relied on the grids at step five instead of the VE's testimony. For this

additional reason, the VE's testimony does not assist in establishing that

Mr. Maynard can perform any jobs if he is limited to less than the full range of

sedentary work.

We need not address Mr. Maynard's argument that the ALJ's RFC fails to

account for the opinion of the state-agency consultants that Mr. Maynard could

climb, balance, stoop, kneel, crouch, and crawl no more than occasionally, *see*

---

[5]     U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991).

-11-

Aplt. App. at 138, and should not endure concentrated exposure to vibrations, *id.* at 140. Whether or not these limitations are supported by substantial evidence or may affect the work Mr. Maynard can perform should be revisited on remand.

B.

Mr. Maynard's third argument is that at step three, the ALJ referred to a prior version of the Listing that concerns disorders of the spine, Listing 1.05, which taints his finding that Mr. Maynard does not meet or equal the Listing. The Commissioner concedes that the ALJ's citation to Listing 1.05 is a reference to the section number for the prior version of the spinal-disorder Listing, which was amended as of February 19, 2002, *see* 66 Fed. Reg. 58,010, 58,010 (Nov. 19, 2001), and renumbered as Listing 1.04, *see id.* at 58,017-18. To overcome this error, the Commissioner urges us to apply the harmless error doctrine by noting that the ALJ referred to a number of the conditions necessary to meet or equal Listing 1.04, which in turn suggests that he considered the proper version. In support of this argument, the Commissioner points to some medical evidence that the ALJ did not specifically reference in his decision, which Mr. Maynard contends is the type of post hoc justification of an administrative decision that is impermissible under *SEC v. Chenery*, 332 U.S. 194, 196 (1947), and our case law applying that principle in social security cases, *see, e.g., Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985).

We need not resolve these issues in view of the fact that we are remanding the case for other purposes. On remand, the ALJ should address the erroneous reference to Listing 1.05 and tie his step-three finding more specifically to the medical evidence as it relates to the specific requirements of Listing 1.04.

C.

Mr. Maynard's final argument is that the ALJ's adverse credibility finding is not affirmatively linked to the record and not supported by substantial evidence. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

After recounting Mr. Maynard's testimony concerning his limitations and daily activities, the ALJ found that

> his impairments and their impact on his ability to work are not supported to the extent alleged by objective medical findings. Although the claimant has some pain and discomfort in his back and legs he is able to ambulate effectively without assistive device. The claimant did suffer an injury and also has severe degenerative disc disease and his weight is also a contributing factor to his back pain. The claimant has not made any attempts to reduce his weight and has not required surgical intervention.

Aplt. App. at 27.

-13-

The first reason given by the ALJ, that the severity of Mr. Maynard's claimed limitations are not supported by objective medical findings, is not closely and affirmatively tied to the record. As noted above, there is substantial evidence in the record that Mr. Maynard suffers from moderately severe to severe degenerative disc disease that causes severe pain and limits the amount he can lift as well as his ability to bend, twist, and sit, and dictates that he should not be exposed to prolonged vibrations. *See, e.g.,* Aplt. App. at 103, 112, 114, 135, 140, 159. The ALJ did not explain why this evidence did not support Mr. Maynard's description of the extent of his limitations. Instead, he gave "a conclusion in the guise of findings." *Huston*, 838 F.2d at 1133.

The second and fourth reasons the ALJ gave have little logical relation to Mr. Maynard's RFC and the step-five determination. Whether or not Mr. Maynard can ambulate effectively without an assistive device is one element of Listing 1.04C, not a requirement for finding Mr. Maynard disabled at step five. The fact that he does not need such a device, therefore, says little about his limitations as they relate to the ability to perform sedentary work. As to the fact that Mr. Maynard has not required surgical intervention, Dr. Loftus stated that he had no surgical remedy to offer, Aplt. App. at 110, and Dr. White stated that fusion surgery was contraindicated, *id.* at 135.

The only reason the ALJ gave that lends some support to his adverse credibility finding is Mr. Maynard's failure to make any attempt to lose weight.

-14-

An ALJ may consider what attempts a claimant made to relieve pain as part of the credibility analysis. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Several of Mr. Maynard's doctors indicated that his weight may be a contributing cause of his back pain. *See* Aplt. App. at 95, 135. However it is unclear whether loss of weight would reduce Mr. Maynard's limitations. It is also unclear whether Mr. Maynard's failure to attempt to lose weight is due to an inability to exercise because of his condition, as he argues, an unwillingness to modify his diet, or some combination of the two. On remand, the ALJ should reconsider this basis for his credibility finding.

III.

For the foregoing reasons, we conclude that substantial evidence does not support the ALJ's RFC, credibility, or step-five findings. The judgment of the district court is REVERSED and the case is REMANDED to the district court with directions to remand the case to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Terrence L. O'Brien
Circuit Judge