**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 22, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CARIE I. ZUMWALT,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 06-6049
(D.C. No. 04-CV-01631-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **HARTZ**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

Carie Zumwalt appeals from an order of the district court affirming the

Commissioner's denial of her applications for Social Security disability and

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for Jo Anne B. Barnhart as appellee in this action.

[**]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Supplemental Security Income benefits. Ms. Zumwalt was born on July 14, 1963. Her left foot was crushed in an automobile accident in 1986 and she has a long history of being diagnosed with and treated for depression and anxiety. Her last three jobs were as a housekeeper between June 1988 and August 1997.

On June 4, 2001, Ms. Zumwalt filed her applications alleging that she had become disabled on July 15, 1997. She claimed that she was unable to work because of problems with her foot, depression, problems with memory and concentration, and anxiety. Her applications were administratively denied initially and on reconsideration. She then requested and received a hearing before an administrative law judge (ALJ). The ALJ determined that Ms. Zumwalt retained the residual functional capacity (RFC) to perform light exertional work, but that she was limited to simple, routine work because of her mental limitations. The ALJ found that she could therefore perform her past relevant work as a housekeeper despite her "medically determinable depression, anxiety and fractured left lower extremity." Aplt. App. at 27. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. *See Jensen v. Barnhart*, 436 F.3d 1163, 1164 (10th Cir. 2005). Ms. Zumwalt then sought relief from the district court, which adopted a magistrate judge's recommendation that the Commissioner's decision be affirmed. Ms. Zumwalt appeals.

On appeal Ms. Zumwalt argues that the ALJ's RFC finding was not supported by substantial evidence because her mental impairments required more

than a limitation to simple, routine work. In support of this argument she directs this court to the medical evidence from licensed professional counselor (LPC) Kimberly Feronti-Dickinson; from Dr. Gary Dickinson, who treated her; and from Dr. J. Ronald Cruse, an agency expert consulting physician, who performed a mental-status exam (MSE). Ms. Zumwalt's main argument is that Dr. Dickinson was a treating source and that the ALJ erred in not giving his medical opinion controlling weight or, at least, failed to make the proper findings explaining why controlling weight was not given and what weight was given. She also argues that supporting evidence from LPC Feronti-Dickinson and Dr. Cruse was ignored and that when the evidence from these three professionals is properly considered, it proves her disability.

Ordinarily, we review on appeal the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). But here we agree with the Commissioner that Ms. Zumwalt's objections to the magistrate judge's report and recommendation were not specific enough to preserve for review the arguments she makes on appeal. We hold that these arguments have been waived and affirm the district court.

I.

The earliest medical record is a form from St. Anthony Hospital in Oklahoma City, dated September 27, 1996, showing that an LPC at the hospital diagnosed Ms. Zumwalt with depression and adult attention deficit disorder (ADD). The LPC recommended individual psychotherapy and a referral to a primary care provider for ADD medication. The LPC expected a positive response to treatment.

The next records are from Dr. Clinton Winslow, who treated Ms. Zumwalt from January 22 through August 18, 1997. Only two of Dr. Winslow's records reference Ms. Zumwalt's mental health. The first notes that she was emotionally stable at the time but had reported a history of depression and alcoholism and that Dr. Winslow gave her a prescription for a refill of Paxil, which she reported she had been taking "for some time" for her depression. Aplt. App. at 141. The second of these records shows that during an August 18, 1997, appointment to treat her allergies, Dr. Winslow observed that she "denie[d] homicidal or suicidal ideation," was "[w]ell groomed," had "[n]ormal thought processes," and "[n]ormal affect," and was "stable." *Id*. at 133. Dr. Winslow diagnosed her as having "[d]epression (stable)" and gave her another prescription for Paxil. *Id*.

Ms. Zumwalt received medical care at the Oklahoma City Indian Clinic between November 20, 1997, and April 13, 2001. The clinic's records show that Ms. Zumwalt received treatment for a number of physical and mental complaints,

including depression and chronic pain in her left foot.  At times she was denied medication for depression and adult ADD and referred to outside psychiatric services; but on other occasions she was prescribed antidepressants by other providers at the clinic.  The records do not show what psychiatric evaluation methods were used by these providers to diagnose Ms. Zumwalt's psychiatric disabilities, nor do the records contain any medical opinions about the severity of Ms. Zumwalt's mental limitations.

LPC Feronti-Dickinson met with Ms. Zumwalt for the first time on April 30, 2001, and completed her professional assessment the next day.  That assessment is summarized in a letter dated May 10, 2001.  She diagnosed Ms. Zumwalt with "adult ADD, acute anxiety/depression and PTSD [posttraumatic stress disorder]."  Aplt. App. at 145.  The letter said that "[Ms. Zumwalt] was earlier diagnosed with acute anxiety and was placed on Paxil but now appears to be intolerant of any benefit from this medication," and that "[s]he is completely unable to function and has been basically condemend [sic] to her home for at least the past two (2) years."  *Id*.  LPC Feronti-Dickinson determined that Ms. Zumwalt "is at this time completely disabled and needs some sort of assistance to be able to achieve a productive future."  *Id*.

LPC Feronti-Dickinson's notes and the record of the MSE performed on Ms. Zumwalt's first visit reveal similar findings, including a determination that

Ms. Zumwalt had a global assessment of functioning (GAF) score of 40.[1] LPC

Feronti-Dickinson referred Ms. Zumwalt to Dr. Dickinson, a family practice

doctor, to evaluate her for psychotropic medication and medication management.

Dr. Dickinson's records show three appointments with Ms. Zumwalt in a

45-day period. The first was on May 1, 2001, the day after her first appointment

with LPC Feronti-Dickinson and a month before she filed her applications for

benefits. At the initial appointment Dr. Dickinson was told that she had been

previously treated for depression and had "taken Paxil . . . daily for about the past

10 years"; that she suffered from "depression, anxiety, irritability, and anxiety

attacks"; and that she had been previously diagnosed with attention deficit

hyperactivity disorder (ADHD), but never formally treated. *Id*. at 164. He noted

that Ms. Zumwalt was "alert and oriented" and wrote:

> Affect appear[s] mildly depressed, but her thought processes are
> intact and there is no inappropriate behavior displayed. She does
> seem apprehensive about the exam; however, conversation appears to
> be normal otherwise and further mental status exam reveals no
> delusions or hallucinations.

---

[1] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000). A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id*. at 34.

*Id*. Dr. Dickinson prescribed medication for ADHD and an antidepressant and recommended that she continue counseling with LPC Feronti-Dickinson.

The record of the second appointment shows that Ms. Zumwalt stopped taking the anti-ADHD medication and had started taking an anti-anxiety medication. She also had "responded well" to the antidepressant but felt that its efficacy may have disappeared just before the appointment. *Id*. at 163. Dr. Dickinson increased the dosage of the antidepressant.

The record of the final appointment on June 14, 2001, shows that Ms. Zumwalt again changed her medication regimen, taking a new antidepressant in the morning and the previously described antidepressant at night, while continuing to take the anti-anxiety medication. According to the record, "[t]his is the first time that she has noticed a remarkable improvement in her feelings of depression and anxiety." *Id*. Dr. Dickinson noted: "She still feels somewhat emotional . . . . She is interacting better with her husband and family. She still sleeps well at nighttime." *Id*. He also reported: "The patient is alert and oriented. Affect appears improved. She smiles and appears to have a more comfortable feeling today. No display of anxiety at this time. Thought processes are intact and there is no inappropriate behavior displayed." *Id*. His diagnoses were "Depression - improved," "Anxiety - improved," and "Possible ADD - stable." *Id*.

After Ms. Zumwalt filed her disability applications, she received an MSE from Dr. Cruse. His report of January 24, 2002, noted, among other things, that her mood was serious and depressed and her affect was serious and sad. Dr. Cruse concluded:

> I would judge her intellectual ability to be average. Her delayed recall and concentration are above average. Her recent memory, past memory, and judgment are average. Her immediate memory and abstract thinking are below average. Her depression and anxiety appear to be moderate to severe, thus limiting her ability to make adjustments occupationally, personally and socially.

*Id.* at 227. He diagnosed Ms. Zumwalt with major depressive disorder and anxiety disorder NOS,[2] as well as alcohol dependence and polysubstance abuse in remission.

Also in the record are a Psychiatric Review Technique (PRT) form and an RFC assessment form, both dated February 15, 2002, prepared by Dr. Sally Varghese, another consulting physician. Apparently relying heavily on the MSE from Dr. Cruse, Dr. Varghese noted major depressive disorder and anxiety disorder NOS, as well as alcohol and polysubstance abuse (both in remission). Dr. Varghese found that Ms. Zumwalt had moderate (1) "Restriction of Activities of Daily Living," (2) "Difficulties in Maintaining Social Functioning," and (3)

---

[2] "NOS" apparently stands for "not otherwise specified." Anxiety Disorder NOS is a diagnosis that "includes disorders with prominent anxiety or phobic avoidance that do not meet criteria for any specific Anxiety Disorder, Adjustment Disorder With Anxiety, or Adjustment Disorder With Mixed Anxiety and Depressed Mood." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 484 (Text Revision 4th ed. 2000).

"Difficulties in Maintaining Concentration, Persistence, or Pace." *Id*. at 243. On the RFC assessment form, Dr. Varghese reported that Ms. Zumwalt was moderately limited in her "ability to understand and remember detailed instructions," her "ability to carry out detailed instructions," and her "ability to interact appropriately with the public," and was not significantly limited in any of the other listed abilities. Dr. Varghese concluded: "[Ms. Zumwalt] can follow simple routine directions. She can relate for work purposes." *Id*. at 231.

At the April 12, 2004, hearing before the ALJ, Dr. Dian Bower, a clinical psychologist, testified to Ms. Zumwalt's mental limitations. Under examination by the ALJ, Dr. Bower testified that Ms. Zumwalt had "some intermittent treatment since '96 several times that she sought treatment at different centers"; that "[s]he's been given medication, and each time in a very short period of time had a very favorable response to that medication"; and that she would have only a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. *Id*. at 275.

Under examination by Ms. Zumwalt's attorney, Dr. Bower testified that although the GAF score of 40 recorded by LPC Feronti-Dickinson indicated that Ms. Zumwalt was "in some . . . psychiatric distress," *id*. at 277, a GAF score is like a "snapshot," *id*. at 278. Dr. Bower said that it was not uncommon for people seeking treatment to initially have a GAF level of 40 but that what he looked for

was "how did this patient respond to the treatment that she got," and that it appeared from the medical records that Ms. Zumwalt responded to Dr.Dickinson's treatment and then quit the treatment. *Id*. at 277-78. Dr. Bower stated, however, that if Ms. Zumwalt was still seeing Dr. Dickinson, there must be additional records and that "those [records] would be really helpful to see what happens to that [GAF score of] 40." *Id*. at 279. Ms. Zumwalt's attorney informed the court that he had requested the rest of Dr. Dickinson's records but that the records were not available before the hearing. The court agreed to hold the proceeding open until the end of April 2004 to receive the additional records.

No additional treatment records from Dr. Dickinson were presented. Instead, an opinion letter from Dr. Dickinson dated April 19, 2004, was submitted. The letter stated that he had been treating Ms. Zumwalt for the previous three years and continued:

> Due to the symptoms of the psychological impairments, it is my opinion that Ms. Zumwalt should be restricted to activities with low stress that require only occasional interaction with the general public and co-workers. Due to the inability to maintain work stressors, this individual should not be subjected to work quotas or production schedules.

> Ms. Zumwalt has marked limitations in both the ability to maintain attention and concentration for extended periods of time, and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

> She will be unable to complete a normal workday and workweek without interruptions from psychologically based symptoms and unable to perform at a consistent pace without an unreasonable

number and length of rest periods. It is my opinion that she would miss at least 2 days each week due to extreme fatigue and depression.

I feel the above limitations have been present since at least May 2000, and will continue for the foreseeable future.

*Id.* at 247. The letter concluded: "My opinion is based upon my observations and examinations of Ms. Zumwalt and fully set forth in the medical records of this facility." *Id.*

The ALJ denied Ms. Zumwalt's applications for benefits. In district court Ms. Zumwalt raised with the magistrate judge the same arguments she raises on appeal regarding the adequacy of the ALJ's consideration and findings regarding the medical evidence. In his report and recommendation the magistrate judge stated that the ALJ "did not err in formulating [Ms. Zumwalt's] RFC, specifically that he did not err in his treatment of the opinion of the medical sources." Aplt. App. at 329. The district court adopted the magistrate judge's recommendation and affirmed the ALJ's decision.

II.

The Commissioner argues that Ms. Zumwalt's objections to the magistrate judge's recommendations were insufficient to preserve her appellate arguments.

This court has on a number of recent occasions recognized that waiver principles developed in other litigation contexts are equally applicable to social security cases. Thus, waiver may result from the disability claimant's failure to (1) raise issues before the magistrate judge, (2) object adequately to the magistrate judge's recommendation, (3) preserve issues in the district court as a general matter, or (4) present issues properly to this court.

*Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (citations and internal quotation marks omitted). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for appellate review." *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (ellipsis and internal quotation marks omitted). We have held that objections must be specific because "only an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act that led us to adopt a waiver rule in the first instance." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Ms. Zumwalt's objection to the magistrate judge's report is so short, we quote it in full:

> Plaintiff, Carie Zumwalt, hereby objects to the Findings and Recommendation of the United States Magistrate Judge filed herein on November 30, 2005. Plaintiff's objection is based on several points. The Report and Recommendations do not adequately consider the Plaintiff's argument that the Administrative Law Judge disregarded the opinion of claimant's treating physician, Dr. Dickinson, when formulating the Residual Functional Capacity. The Magistrate also failed to give adequate consideration to Plaintiff's argument regarding the Administrative Law Judge's disregard of the opinion of Dr. Cruse. Dr. Cruse stated "Her immediate memory and abstract thinking are below average. Her depression and anxiety appear to be moderate to severe, thus limiting her ability to make adjustments occupationally, personally, and socially." He diagnosed the Plaintiff with a major depressive disorder and anxiety disorder. The ALJ failed to include the above listed impairments in claimant's RFC and he failed to provide any sort of an explanation as to why he did not do so. Plaintiff argues the ALJ's decision is not adequate

-12-

under *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995). While *Kepler* does not require a factor by factor recitation of the evidence, the ALJ is still required to provide a reviewable analysis of the evidence of record. *See Hardman*, 362 F.3d at 678-679. The Magistrate errs by accepting the ALJ's conclusory findings.

Plaintiff urges the Court to reverse and remand the Administrative Law Judge's decision because the decision is not supported by substantial evidence and the Administrative Law Judge failed to follow the correct legal standard.

Aplt. App. at 331-32.

The one-sentence objection regarding Dr. Dickinson is a conclusory assertion, not a reasoned argument. The objection regarding Dr. Cruse does not acknowledge the magistrate judge's determination that the ALJ's decision was *consistent* with Dr. Cruse's opinion or specify why that determination was erroneous. And there is no mention whatsoever of LPC Feronti-Dickinson. We conclude that under our firm-waiver rule, Ms. Zumwalt's objections were not sufficiently specific to preserve her arguments for appeal.

III.

Nevertheless, our firm waiver rule "does not apply . . . when . . . the interests of justice require review." *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005) (internal quotation marks omitted); *see Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006) (interests of justice did not excuse waiver under facts of case). We must therefore determine whether the interests of justice dictate that we address Ms. Zumwalt's appellate arguments.

-13-

We have said that "our decisions have not defined the 'interests of justice' exception with much specificity" and that "[l]ikely this is because 'interests of justice' is a rather elusive concept." *Morales-Fernandez*, 418 F.3d at 1119-20. (internal quotation marks omitted). The factors that we have considered in determining whether to invoke this exception have generally been the litigant's conduct in complying with the objection requirement and the importance of the issues raised. *See id.* at 1120. In *Morales-Fernandez* we held that "[i]n many respects, the interests of justice analysis we have developed, which expressly includes review of a litigant's unobjected-to substantive claims on the merits, is similar to reviewing for plain error," *id.* at 1120, and that "[a]t a minimum . . . our 'interest of justice' standard for determining whether we should excuse a defendant's failure to object to a magistrate judge's recommendation includes plain error," *id.* at 1122. In *Wardell v. Duncan* we took this analysis a step further, holding that "[t]he waiver rule may be suspended when the 'interests of justice' warrant, *or* when the aggrieved party makes the onerous showing required to demonstrate plain error." 470 F.3d 954, 958 (10th Cir. 2006) (citation omitted) (emphasis added). In that case we determined that because the plaintiff "bore some responsibility for the failure to receive the [magistrate judge's] recommendation[,] . . . [the] interests of justice would not warrant our suspension of the waiver rule." *Id.*

Ms. Zumwalt was represented by counsel and objections–albeit unspecific ones–were filed. There are no mitigating factors regarding her failure to comply with the objection requirement. Accordingly, the interests of justice do not require review and our only concern is plain error.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Morales-Fernandez*, 418 F.3d at 1122-23 (internal quotation marks omitted). "[A]n error is 'plain' if it is clear or obvious at the time of the appeal." *Id*. at 1124. An error "affects substantial rights" if there is "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id*. (internal quotation marks omitted). Finally, if, as here, the alleged error is nonconstitutional, a party must show "that allowing [her] non-constitutional error to stand would be particularly egregious and would constitute a miscarriage of justice" in order to satisfy the fourth prong of the test. *Id*. (internal quotation marks omitted).

Ms. Zumwalt's primary claim is that Dr. Dickinson was her treating physician and that the ALJ erred in not giving his medical opinion controlling weight or, at least, in not making explicit findings why controlling weight was not given and what weight was given. Under our precedent, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not

required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). An ALJ's notice of determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks omitted). A "[t]reating source" is a claimant's "own physician, psychologist, or other acceptable medical source." 20 C.F.R. §§ 404.1502, 416.902. An "acceptable medical source" is (1) a licensed physician; (2) a licensed or certified psychologist; (3) a licensed optometrist, for certain purposes; (4) a licensed podiatrist, for certain purposes; and (5) a qualified speech-language pathologist, for certain purposes. 20 C.F.R. §§ 404.1513(a)(1-5), 416.913(a)(1-5).

The ALJ must first decide whether the treating source's opinion is entitled to controlling weight. To make this determination

> [a]n ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (internal quotation marks and citations omitted). Even if the ALJ determines that the treating source's opinion is not entitled to

-16-

"controlling weight," the opinion is still entitled to deference and must be

weighed by using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1300-01(internal quotation marks omitted); *see* 20 C.F.R.

§§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). "After considering the pertinent

factors, the ALJ must 'give good reasons in the notice of determination or

decision' for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at

1301 (quoting 20 C.F.R. § 404.1527(d)(2)). "Finally, if the ALJ rejects the

opinion completely, he must then give specific, legitimate reasons for doing so."

*Id*. (internal quotation marks omitted).

As noted by the magistrate judge, the ALJ's decision did not contain

explicit findings regarding the weight that the ALJ gave Dr. Dickinson's opinion.

The ALJ discussed Dr. Dickinson's 2004 letter stating that Ms. Zumwalt's mental

limitations would make it impossible for her to complete a normal workday or

workweek and that the limitations had been present since May of 2000. The ALJ

then immediately referenced Dr. Dickinson's medical records from May of 2001

showing that at that time Ms. Zumwalt "had some irritability, no major anxiety

-17-

attacks and her medications had improved her sleep and decreased the depression." Aplt. App. at 25. The ALJ followed this with a reference to Dr. Cruse's determination on January 24, 2002, "that she was oriented x3, her delayed recall and concentration were above average and her recent memory, and past memory and judgment were average. She is limited due to moderate to severe depression." *Id*. at 26. The ALJ stated that he "considered the determinations made by the State Agency pursuant to SSR 96-6p, and agrees that the claimant has anxiety and depression and [is] limited to simple, routine work and [is] able to perform her past work as a housekeeper." *Id*.[3]

The magistrate judge determined that it was clear from the decision (1) that the ALJ did not give Dr. Dickinson's opinion controlling weight because of contradictory medical evidence, and (2) that the ALJ "only gave Dr. Dickinson's opinion such weight as was consistent with that of the consultative examiner and the state medical consultant" after considering the degree to which Dr. Dickinson's opinion was supported by relevant evidence and was consistent with the record as a whole. Aplt. App. at 326-27. We are unconvinced that any error by the ALJ in failing to be more explicit about how he weighed Dr. Dickinson's opinions was an error that "affects substantial rights" or would "constitute a miscarriage of justice." *Morales-Fernandez*, 418 F.3d at 1124.

---

[3]     S.S.R. 96-6p addresses, among other things, the consideration that an ALJ should give to the findings, including RFC findings, of State Agency medical and psychological consultants. 1996 WL 374180.

Nor has Ms. Zumwalt established plain error in any other respect. She claims that the ALJ did not make sufficient findings concerning LPC Feronti-Dickinson's records and opinions and that the ALJ ignored some of her determinations completely. But LPC Feronti-Dickinson was not an acceptable medical source, 20 C.F.R. §§ 404.1513(a)(1-5), 416.913(a)(1-5), or a treating source, 20 C.F.R. §§ 404.1502, 416.902, and the ALJ's decision discussed her findings, her opinion that Ms. Zumwalt was completely disabled, and her assignment of a GAF score of 40. Although Ms. Feronti-Dickinson's assessment would be considered other medical evidence that could be used to show the severity of her impairments, 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1), the ALJ had no obligation to give LPC Feronti-Dickinson's assessment the same weight as a "medical opinion," 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments). Further, the statements not referenced in the ALJ's determination concerned LPC Feronti-Dickinson's belief that Ms. Zumwalt was disabled, a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Ms. Zumwalt also argues that the ALJ failed to include in his RFC finding "the specific limitations noted by Dr. Cruse." Aplt. Br. at 18. The ALJ, however, discussed Dr. Cruse's opinion in detail in his decision. Dr. Cruse conducted only an MSE. He did not make an RFC finding or determine that Ms. Zumwalt had

any "specific limitations," although Dr. Varghese relied on Dr. Cruse's examination in completing a mental RFC assessment and a PRT form. The ALJ did not ignore the opinions of Dr. Cruse and no plain error occurred.

Finally, we reject any claim that plain error occurred in that the RFC finding was not supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (internal quotation marks omitted). The evidence recited earlier adequately supports the ALJ's findings.

Keeping in mind that "[i]t is beyond dispute that the burden to prove disability in a social security case is on the claimant," *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (internal quotation marks omitted), the final opinion letter from Dr. Dickinson, which was inconsistent with the only treatment records presented from him, does not plainly overwhelm the evidence supporting the ALJ's position.

### III. CONCLUSION

Ms. Zumwalt's objection to the magistrate judge's report and recommendation was not sufficiently specific to preserve her right to make her

arguments on appeal and the circumstances of this case are not so exceptional that the interests of justice dictate that we should review Ms. Zumwalt's arguments.

The judgment of the district court is AFFIRMED.

Entered for the Court


Harris L Hartz
Circuit Judge