FILED
United States Court of Appeals
Tenth Circuit

June 23, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KATHY L. POPPA,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, in his
capacity as Commissioner of the
Social Security Administration,

Defendant-Appellee.

No. 08-4209
(D.C. No. 1:08-CV-00037-DAK)
(D. Utah)

## ORDER

Before **KELLY**, **McKAY** and **BRISCOE**, Circuit Judges.


The Commissioner has requested that we publish our order and judgment

filed in this case on May 27, 2009.  Upon consideration, the motion is granted.

The attached opinion is substituted for the order and judgment previously

filed on May 27, 2009.


Entered for the Court,

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

May 27, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KATHY L. POPPA,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, in his
capacity as Commissioner of the
Social Security Administration,

Defendant-Appellee.

No. 08-4209

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 1:08-CV-00037-DAK)

Submitted on the briefs:[*]

Michael E. Bulson, Wendy Fenton, Utah Legal Services, Inc., Salt Lake City,
Utah, for Plaintiff-Appellant.

Brett L. Tolman, United States Attorney, Alexess D. Rea, Special Assistant
United States Attorney, Deana R. Ertl-Lombardi, of Counsel and Regional Chief
Counsel, Social Security Administration, Office of the General Counsel, Region
VIII, Denver, Colorado, for Defendant-Appellee.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Kathy L. Poppa appeals from an order of the district court affirming the Commissioner's decision denying her application for supplemental security income (SSI) benefits. The claim at issue in this appeal was filed on January 20, 2004, alleging disability since June 1, 2002.[1] The agency denied Ms. Poppa's application initially and on reconsideration. Ms. Poppa received a de novo hearing before an administrative law judge (ALJ). Because the ALJ concluded that Ms. Poppa had the residual functional capacity (RFC) for sedentary work and that she could perform a significant number of jobs in the national economy, he denied her claim for SSI benefits. The Appeals Council denied review and Ms. Poppa appealed to the district court. The district court reversed and remanded for further findings.

On remand, Ms. Poppa had another hearing before a different ALJ. Ms. Poppa submitted additional evidence at the hearing. The second ALJ determined that Ms. Poppa had severe impairments from spine and knee arthritis, mental disorders, fibromyalgia, and carpal tunnel but he concluded that none of

---

[1] Ms. Poppa filed four prior applications for benefits in 1994, 1996, 1997, and 2002. All of her prior applications were denied and are not at issue in this appeal.

-2-

the impairments or combination of impairments met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Ms. Poppa had the RFC to perform a limited range of light exertional work. He denied Ms. Poppa's application for benefits, concluding that she was not disabled at step five of the analysis because she could perform a significant number of jobs in the national economy. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step process for evaluating claims for disability benefits). The Appeals Council denied review. Ms. Poppa sought further review in the district court and that court affirmed the ALJ's decision. This appeal followed.

We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). Because the Appeals Council declined to review Ms. Poppa's appeal after the second ALJ denied her claim for benefits, that ALJ's decision is the Commissioner's final decision for purposes of our review. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). "We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Id*. at 760. On appeal, Ms. Poppa argues: (1) the ALJ violated res judicata or the law of the case doctrine by changing her RFC from sedentary to light; (2) the ALJ's finding that she could perform light work is not supported by substantial evidence; and (3) the ALJ erred in not complying with Social Security Ruling (SSR) 00-4p. We affirm.

Res Judicata and the Law of the Case Doctrine

Ms. Poppa contends that the second ALJ's decision violated either res judicata or the law of the case doctrine because those doctrines precluded the second ALJ from relitigating the issue of her RFC after it was established in the first ALJ's decision. We disagree with Ms. Poppa's contention.

Res judicata applies in the social security context when there has been a "previous determination or decision . . . about [the claimaint's] rights on the same facts and on the same issue or issues, *and this previous determination has become final by either administrative or judicial action*." 20 C.F.R. § 416.1457(c)(1) (emphasis added). Here the first ALJ's decision does not constitute a final decision for the purposes of res judicata because Ms. Poppa sought review of the first ALJ's decision from the Appeals Council and then the district court. *See id.* § 416.1455(b) (explaining that an ALJ's decision is binding on all parties to the hearing unless the claimant requests review of the decision by the Appeals Council, the Appeals Council denies review, and the claimant seeks judicial review in district court).

Our conclusion that administrative res judicata does not apply in this case is consistent with our precedent. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223-24 (10th Cir. 2004) (noting that after remand from the Appeals Council, "[i]t was certainly within the ALJ's province, upon reexamining [claimant's] record, to revise his RFC category"); *Campbell v. Bowen*, 822 F.2d 1518, 1521-22

-4-

(10th Cir. 1987) (holding that the ALJ did not err in changing claimant's RFC from sedentary to light after remand from the Appeals Council). The Sixth Circuit case cited by Ms. Poppa is distinguishable because that case involved two separate applications for benefits and a final decision had been issued on the earlier application, s*ee Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 838-39, 841 (6th Cir. 1997). In contrast, this case involves one application for benefits and the first ALJ's decision did not constitute a final decision.

The second ALJ's RFC determination likewise does not violate the principles of the law of the case doctrine. Under that doctrine, an "administrative agency, on remand from a court, [must] conform its further proceedings in the case to the principles set forth in the judicial decision . . . ." *Copart, Inc. v. Admin. Review Bd.*, *U.S. Dep't of Labor*, 495 F.3d 1197, 1201 (10th Cir. 2007) (quotation omitted). The law of the case doctrine only "applies to issues previously decided, either explicitly or by necessary implication." *Id*. (quotation omitted). Here, the district court's decision reversing and remanding the ALJ's first decision did not make any determinations, explicitly or implicitly, regarding the first ALJ's assessment of Ms. Poppa's RFC.

On remand, the district court instructed the ALJ to reconsider Ms. Poppa's credibility applying the relevant factors from SSR 96-7p and to make findings

linked to evidence in the record.[2]  The regulations require that an ALJ's RFC be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints.  *See* 20 C.F.R. §§ 416.929, 416.945.  Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.  A new determination on Ms. Poppa's credibility necessarily required reassessment of the RFC.  Because there was no explicit or implicit decision by the district court on the validity of the first ALJ's RFC determination, the second ALJ was free to reassess the RFC on remand without violating the law of the case doctrine.  *Cf. Campbell*, 822 F.3d at 1521-22 (concluding that redetermination of RFC on remand from Appeals Council was not inconsistent with the Appeals Council's remand order and that the remand order did not bind the ALJ to the earlier decision).

The RFC Assessment

Ms. Poppa argues that substantial evidence does not support the second ALJ's RFC finding because (1) no exceptions to the law of the case doctrine apply and the second ALJ was bound by the first ALJ's RFC finding; (2) the

---

[2]     The district court also instructed the ALJ to reconsider and make specific findings about (1) Ms. Poppa's mental impairment, (2) her claim that she was disabled by a combination of impairments, and (3) whether she met Listing 1.04 for disorders of the spine.  Ms. Poppa does not challenge the second ALJ's decision on these issues.

ALJ's assessment of her credibility was flawed; and (3) the opinion evidence considered by the ALJ does not support an RFC for light work.

We note initially that we will not address Ms. Poppa's first issue. Because we conclude that the second ALJ's decision did not violate the law of the case doctrine, we do not need to address whether an exception to that doctrine applies.

*Credibility Determination*

Ms. Poppa argues that the ALJ's crediblity determination was flawed. Ms. Poppa asserts that the ALJ erred because he did not consider the relevant factors as required by SSR 96-7p. Our precedent "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ set forth the factors from SSR 96-7p and then spent the next several pages identifying evidence from the record that related to the factors and supported his credibility determination.[3] *See*

---

[3]   The ALJ discussed Ms. Poppa's daily activities, *see* Aplt. App., Vol. II at 402; her pain and other symptoms, *see id*. at 400-02; the factors that aggravate her symptoms, *see id*. at 401-02; the type, dosage and effectiveness of her medications, *see id*. at 400-01; other measures that provide relief from her symptoms, *see id*. at 401; and other factors concerning her functional limitations and restrictions due to pain, *see*, *e.g.*, at 400 (noting that Ms. Poppa's straight leg raising was positive before surgery and has been negative since the surgery); *id*. (noting nurse practitioner's statement that Ms. Poppa "had a longstanding history of pain medication seeking as well as Soma seeking requests"); *id*. at 402 (noting that physician did not give full weight to Ms. Poppa's reported pain symptoms).

Aplt. App., Vol. II at 400-03.  The ALJ properly considered the relevant factors and the evidence in the record in making his credibility determination.

Ms. Poppa also disputes the ALJ's conclusion that Ms. Poppa has shown drug-seeking behavior and that this impacted her credibility.  She argues that "[i]n the entire record there is only one reference to possible inappropriate use of pain medications–a single entry on July 26, 2005 that Poppa had a history of "'pain medication seeking as well as Soma seeking requests.'"  Aplt. Br. at 28 (quoting Aplt. App., Vol. II at 533).  Ms. Poppa's statement is not accurate because the ALJ referenced other record evidence to support his conclusion about Ms. Poppa's drug-seeking behavior.  For example, in discussing an August 19, 2005 doctor's visit, the ALJ noted that Ms. Poppa

> wanted to increase her Oxycontin to three times a day, which was against clinic policy and against recommended dosing.  She also said she was going on vacation and wanted Lortab to use when her Oxycontin ran out.  She was vague about how long she would be gone on vacation (2-3 weeks).  [The doctor] refused to prescribe the Lortab and also refused her request to post date the prescription.

Aplt. App., Vol. II at 401.  The ALJ noted also that on February 23, 2006, Ms. Poppa "initiated [a] higher dose of Oxycontin on her own," and that on December 29, 2006, "she again asked for a post dated narcotic prescription."  *Id.*[4]

---

[4] There are additional references in the record that support the ALJ's conclusion that Ms. Poppa was exhibiting drug-seeking behavior.  *See* Aplt. App., Vol. II at 539-40 (noting that Ms. Poppa came to the clinic "requesting pain medication as well as [S]oma" because she "lost" her prescription; the clinic

(continued...)

-8-

Contrary to Ms. Poppa's assertion that the only evidence of drug-seeking behavior is a "single, isolated remark in the record," Aplt. Br. at 29, there is sufficient evidence in the record to support the ALJ's determination that Ms. Poppa's credibility about her pain and limitations was compromised by her drug-seeking behavior.

*Opinion Evidence*

Ms. Poppa asserts that the opinion evidence considered by the ALJ does not support a light RFC. The ALJ noted that the most recent agency experts to review the evidence found Ms. Poppa able to perform light work with certain limitations. That evaluation took place in April 2004. Ms. Poppa argues that the ALJ's reliance on this evaluation is misplaced because the evaluation occurred before the first ALJ found Ms. Poppa limited to sedentary work. She continues to

---

[4](...continued)
refused to provide her with any more pain medication until they heard back from her doctor); *id*. at 526 (noting that it appeared as though Ms. Poppa was in compliance with her pain contract, but that they would continue to monitor her "because in the recent past [she] has requested extra medication for traveling and/or losing it so we just want to make sure that we are on top of the situation here"); *id*. at 499 (noting that Ms. Poppa requested additional pain medication– "Percocet or something for breakthrough pain," even though she was already taking OxyContin; she was informed that she would not be getting any other narcotics or muscle relaxants); and *id*. at 476 (noting that Ms. Poppa "has tried many, many medications and it appears from communication with Utah Medicaid that despite the fact that some of the medications are not being used that the patient is getting them filled" and that Ms. Poppa's current medication plan would be communicated to the pharmacy so that her medications "are dispensed appropriately and correctly").

argue that the second ALJ was bound by the first ALJ's decision. As we have discussed previously, we are not persuaded by this argument.

Ms. Poppa argues also that the ALJ improperly dismissed a January 2003 opinion of a state agency evaluator in which the evaluator determined that Ms. Poppa had an RFC for sedentary work. The ALJ appeared to give diminished weight to the earlier opinion because the evaluation was performed before Ms. Poppa completed her current application and did not take into account the subsequent evidence that showed improvement in her condition after her two back surgeries in early 2005.[5] Without citing to specific record evidence, Ms. Poppa argues generally that the evidence does not show that her condition improved significantly after her 2005 surgeries.

The ALJ's discussion, however, includes references to record evidence that supports his conclusion that Ms. Poppa's condition improved after the surgeries in early 2005 and that therefore the January 2003 opinion was entitled to less weight. For example, the ALJ noted that at Ms. Poppa's July 12, 2005 visit to the clinic, the nurse practitioner stated that Ms. Poppa "appeared to be without significant pain." Aplt. App., Vol. II at 402. The ALJ noted further that at her

---

[5] The ALJ incorrectly stated that the surgeries took place in "early 2004," Aplt. App., Vol. II at 403-04, but we agree with the Commissioner that this was a mere scrivener's error and did not affect the outcome of the case. The ALJ had noted the correct date of the surgeries earlier in his decision. *See id*. at 402.

November 1, 2005 visit, Ms. Poppa "had relatively full range of motion in her upper extremity neck and shoulder area and minimal decrease in range of motion in the lower back area" and that "[d]espite increasing complaints of chronic pain in connection with her requests for continuing medication, the leg lift tests were all negative after surgery." *Id*. at 403. Finally, at her July 11, 2006 visit, the ALJ noted that Ms. Poppa "was able to function fairly well with pain management." *Id*.

The ALJ did not err in his consideration of the opinion evidence.

Social Security Ruling 00-4p

Ms. Poppa argues that the ALJ erred in not complying with SSR 00-4p, which requires that an ALJ must inquire about and resolve any conflicts between a Vocational Expert's (VE) testimony regarding a job and the description of that job in the Dictionary of Occupational Titles (4th ed. 1991) (DOT).[6] Although we

_____

[6]  The ruling at issue states:

When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
        Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
        If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

(continued...)

-11-

agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts.

Ms. Poppa asserts that there were two conflicts between the VE's testimony and the DOT and that the ALJ erred by not having the VE give a reasonable explanation for these apparent conflicts. After the ALJ gave the VE a hypothetical with all of the limitations that were ultimately included in Ms. Poppa's RFC, the VE came up with two jobs: "Cleaner, Housekeeping" (DOT 323.687-014), and "Mail Clerk" (DOT 209.687-026).

Ms. Poppa notes that in the job description for "Cleaner, Housekeeping," it states: "'Performs other duties as described under CLEANER (any industry) I Master Title.'" Aplt. Br. at 33 (quoting DOT 323.687-014, 1991 WL 672783). She contends that "[t]he ALJ never asked the VE what those other duties were and whether a claimant with the RFC stated in the hypothetical would be able to perform them." *Id*. The maximum exertional and non-exertional demands of the

---

[6](...continued)
SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added). Our precedent is consistent with this ruling. *See Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) ("[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, *the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT]*, and elicit a reasonable explanation for any discrepancy on this point." (emphasis added)).

"CLEANER, HOUSEKEEPING" job are detailed in that specific job description. *See* DOT 323.687-014, 1991 WL 672783. The DOT explains that: "Master definitions describe work duties that are common or potentially common to a number of jobs. Jobs in which the common duties are an essential part refer to the Master definition title as a device to save space and to avoid repetition of the common duties." DOT, CLEANER I, 1991 WL 645969, at n.a. The Master definition does not change the maximum exertional and non-exertional demands of the individual cleaner jobs within that category, *see id.*, so there is no apparent conflict here between the DOT and the VE's testimony.

Ms. Poppa notes that the second job identified by the VE, "Mail Clerk," requires frequent reaching, handling, and fingering. *See* DOT 209.687-026, 1991 WL 671813. In the ALJ's hypothetical to the VE, he noted that the person had normal grip strength for the right hand, but "slightly below normal" fine and manual dexterity for that hand. Aplt. App., Vol. II at 606. Ms. Poppa argues that the ALJ failed to ask the VE whether a person with those characteristics could perform the job consistent with the DOT requirement for frequent reaching, handling, and fingering. Again, we conclude that there was no conflict that required an explanation from the VE. First, the ALJ's hypothetical to the VE noted that the person could "reach above the shoulders frequently," and "use hands and fingers frequently." *Id.* at 605. These characteristics are consistent with the requirements for frequent reaching, handling and fingering in the Mail

-13-

Clerk position.  Second, the DOT description notes that the requirements for finger dexterity and manual dexterity are designated a "Level 4," which is appropriate for those with dexterity in the "Lowest 1/3 [of the Population,] Excluding Bottom 10%," and reflects a "Low Degree of Aptitude Ability."  DOT 209.687-026, 1991 WL 671813.  There is no conflict between these requirements and Ms. Poppa's "slightly below normal" fine and manual dexterity for her right hand.

Because there were no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless.  *See Massachi v. Astrue*, 486 F.3d 1149, 1153-54, 1154 n.19 (9th Cir. 2007) (noting that ALJ did not ask the VE whether her testimony conflicted with the DOT and that "[t]his procedural error could have been harmless, were there no conflict"); *see also Glass v. Shalala*, 43 F.3d 1392, 1396-97 (10th Cir. 1994) (noting that ALJ's failure to allow claimant to cross-examine the VE was "improper" but did not constitute reversible error because there was no showing that "cross-examination would have altered the evidence before the ALJ").

The judgment of the district court is AFFIRMED.