**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 1, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THOMAS A. TALAMANTES,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

No. 09-1204
(D.C. No. 1:07-CV-01664-CMA)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **HOLMES**, Circuit Judges.

Thomas A. Talamantes appeals from a district court judgment affirming a

decision by the Commissioner of Social Security to deny his application for

disability insurance benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and

42 U.S.C. § 405(g), we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**Background**

Mr. Talamantes alleges disability since June 9, 2004, due to chronic back pain, depression, high cholesterol, and high blood pressure. He last met insured status requirements on December 31, 2005, when he was fifty years old. He has been a tree trimmer and a chef, but stopped working outside the home in August 2000, when he became the primary caretaker of his two children and his residence. His typical day involves self-care, cooking, housework, tending to his animals, and gathering wood for the day.

His primary complaint, back pain, stems from a 1975 rollover motor vehicle accident that occurred while Mr. Talamantes was in military service. For this reason, he has received consistent medical care through the Veterans Administration Health Care System (VA). His back pain, sometimes accompanied by hip, leg, and foot pain, began to worsen in 2000 or 2001. VA medical records compiled from 2000 to 2006 indicate mild degenerative problems at several levels of his lumbar spine, as revealed by an MRI, an x-ray, an electromyogram, a nerve conduction study, a musculoskeletal examination, a neurosurgery examination, observation of motion, and orthopedic tests. Treatment has involved medication and a TENS unit (a device that sends electrical impulses to block pain signals), but surgery has not been recommended. The medical records are replete with observations of exaggerated pain behaviors, conflicting statements about pain levels, and inconsistent descriptions of physical

activities.  His high cholesterol levels and high blood pressure are controlled by medication.

At times, Mr. Talamantes has complained of stress, anxiety, anger, irritability, and depression.  He was prescribed Prozac at his request, but refused formal mental health treatment.  Although a nurse practitioner described him as depressed, a follow-up mental status evaluation indicated that he had normal, nondepressed mood; coherent thought processes; good insight and judgment; intact memory; and an average fund of knowledge.  He was assigned a global assessment of functioning score of 75, which indicates that symptoms, if present, "are transient and expectable reactions to psychosocial stressors (e.g. difficulty concentrating after family argument)," and cause "no more than slight impairment in social, occupation, or school functioning."  *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

Mr. Talamantes' application for disability benefits was denied initially and on reconsideration.  He then requested and received a de novo hearing before an Administrative Law Judge (ALJ).  In her written decision, the ALJ detailed the medical record, discussed Mr. Talamantes' testimony, and reviewed the testimony of a Vocational Expert (VE).  Specifically, the ALJ found that (1) Mr. Talamantes suffered from the severe physical impairment of degenerative changes of the lumbar spine, a condition which was reasonably likely to produce pain and related symptoms; (2) he did not have a severe mental impairment or a severe impairment

related to high blood pressure or high cholesterol; (3) he did not have an impairment or combination of impairments that met or medically equaled a listed impairment; (4) his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible," Admin. App., Vol. 1 at 24; (5) he was unable to perform his previous jobs; (6) he had the RFC to perform a limited range of unskilled light work on the date last insured; and (7) he could perform jobs existing in significant numbers in the national economy, such as gate guard, storage facility rental clerk, and video rental clerk. Thus, the ALJ concluded that Mr. Talamantes was not disabled at step five of the sequential evaluation process. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step framework for determining disability).

## Discussion

On appeal, Mr. Talamantes raises three challenges to the ALJ's decision. "We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Cowan v. Astrue*, 552 F.3d 1182, 1184-85 (10th Cir. 2008) (quotation omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Id.* (quotation omitted).

**Compliance with Medical Opinion Standards**

Mr. Talamantes' first contention is that the ALJ violated the Commissioner's regulations regarding the weight to be given medical opinions. He claims that the ALJ accorded disproportionate weight to the RFC assessment of a nontreating, nonmedical source. It is true that the ALJ mistakenly referred to an evaluator with a doctor-of-education degree as a "[s]tate agency physician" and stated that she gave "significant weight" to the evaluator's opinion. Admin. App., Vol. I at 26.

The ALJ's mistake, however, does not necessarily mean that she committed reversible error. Under the applicable regulations, "[a]n ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ must also evaluate every medical opinion in the record, giving varying weight to each opinion "according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In other words, a violation of the applicable regulations contemplates a disregard of a medical-source opinion.

Here, the ALJ reviewed both the medical record and the state-agency evaluator's RFC findings. She "not[ed] there are no other opinions from treating or examining physicians contained in the file which would indicate the claimant is

-5-

not capable of" the restricted-light-work assessment reached by the evaluator. Admin. App., Vol. I at 26. In reaching her RFC finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id*. at 24.

Agreeing with the evaluator, the ALJ found that Mr. Talamantes had the RFC "to lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to 6 hours in an 8 hour day and sit for up to 6 hours in an 8 hour day with the ability to alternate positions as needed" but was "precluded from stooping, and limited to occasional crouching or crawling." *Id.* at 23. What is more, the ALJ added another restriction to the evaluator's RFC. "[T]o give the claimant the greatest benefit of the doubt," she "assum[ed] that he must have the ability to alternate positions as needed." *Id.* at 26.

The evaluator's assessment and the ALJ's ultimate finding were in accord with the medical evidence, not at odds with it. Although the ALJ erred in mischaracterizing the source of the initial RFC description, this error was not in violation of the medical-opinion regulations: there were no conflicts between the medical opinion on record and the evaluator's opinion. *Cf. Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) (finding harmless error in ALJ's failure to inquire about potential conflict between VE testimony and DOT job descriptions when no actual conflict existed). We conclude the ALJ's misapprehension of the evaluator's medical qualifications amounted to harmless error.

**Substantial Evidence Underlying RFC Determination**

A related issue is Mr. Talamantes' claim that the ALJ's RFC determination is not supported by substantial evidence. He contends that the ALJ should have obtained additional opinions regarding his physical and mental impairments because the medical record contains insufficient evidence to assess his RFC. "In a social security disability case, the claimant bears the burden to prove [his] disability," though the nonadversarial nature of these matters imposes a duty on the ALJ "to ensure that an adequate record is developed . . . consistent with the issues raised." *Flaherty v. Astrue,* 515 F.3d 1067, 1071 (10th Cir. 2007) (quotation omitted).

Mr. Talamantes' physical and mental condition is well-documented in his VA medical records. None of his numerous medical providers suggested uncertainty or the need for additional investigation, so there was no need for further development of the record. The existing medical records provided substantial evidence in support of the ALJ's RFC assessment.

**Commissioner's Step-Five Burden**

If the analysis reaches step five of the sequential-evaluation process, the burden shifts to the Commissioner to show "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005), "given [his] age, education, and work experience," *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (quotation omitted). In posing hypothetical questions to the VE, the ALJ is required to identify only those physical and mental impairments borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

Specifically, Mr. Talamantes argues that the Commissioner did not satisfy his burden at step five of the analysis because the ALJ's hypotheticals did not "relate with precision" all of the impairments included in his RFC. *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted). He claims there is a significant distinction to be made between "the opportunity to alternate positions between sitting and standing," as stated in a hypothetical to the VE, Admin. App. at 360, and the "ability to alternate positions as needed," as described in the RFC, *id.* at 26. Any discrepancy between these two statements is "minor enough not to undermine confidence in the determination of this case." *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993).

Our review of the record indicates that the ALJ's question adequately included the limitations that she found were supported by the medical record. That record, along with the VE's testimony on existing jobs, provided substantial evidence to support the ALJ's step-five determination.

**Conclusion**

For the foregoing reasons, we conclude that the ALJ applied the correct legal standards and substantial evidence supports the ALJ's RFC determination and step-five conclusion. The judgment of the district court is AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge