**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAMES GONZALES,

      Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[*]

      Defendant-Appellee.

No. 11-1511
(D.C. No. 1:10-CV-02178-RPM)
(D. Colo.)

**ORDER AND JUDGMENT**[**]

Before **HARTZ**, **ANDERSON**, and **EBEL**, Circuit Judges.

James Gonzales applied for disability and supplemental security income

benefits, claiming he was disabled by a number of physical and mental conditions.

An administrative law judge (ALJ) held a hearing and issued an unfavorable

---

[*]     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in this action.

[**]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

decision.  The Appeals Council and district court upheld the ALJ's decision, and Gonzales now appeals.  Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

I.    BACKGROUND

Gonzales filed his first application for disability-insurance benefits and supplemental security income in 1999.  An ALJ denied the claim after a hearing in 2001.  The Appeals Council declined Gonzales's request for review.  He did not pursue any further appeal.  Gonzales filed his current application in June 2002 and was ultimately denied benefits after an administrative hearing in 2008 before a new ALJ.  At the hearing Gonzales asked the ALJ to consider evidence from his prior 1999 application.

The ALJ found that Gonzales suffers from degenerative disc disease of the lumbar spine and osteoarthritis of the left shoulder but not radiculitis (nerve root irritation).  Despite these impairments the ALJ determined at step four of the five-step sequential process that Gonzales was not disabled because he retained the residual functional capacity (RFC) to perform his past relevant work as a boiler operator, both as it is generally performed (medium exertion) and as he actually performed it (light exertion).  *See* 20 C.F.R. § 404.1520(a)(4); § 416.920 (a)(4); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process).  The ALJ did not consider evidence from the previous application.

The Appeals Council denied review and the district court upheld the ALJ's decision. This appeal followed.

II.    DISCUSSION

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). On appeal Gonzales argues: (1) the ALJ failed to accord proper weight to the opinions of Gonzales's treating physician; (2) the ALJ inappropriately relied on the assessment of a nonexamining agency physician; (3) the ALJ's credibility finding is not supported by substantial evidence; and (4) additional evidence that Gonzales submitted to the Appeals Council should be considered in this appeal, and that evidence (in particular, an IQ test) demonstrates that the ALJ erred. Gonzales also argues that the first ALJ's findings were entitled to preclusive effect during the hearing before the second ALJ.

A. Gonzales's Treating Physician

Dr. Michael Barris was Gonzales's treating physician. He opined that Gonzales's lumbar radiculitis, left-forearm neuropathy, and right-knee osteoarthritis limited him as follows during a regular work day: to sitting no more than three hours, standing no more than two hours, and walking no more than one hour; lifting frequently no more than five pounds, lifting occasionally no more than 10 pounds, and lifting 20 pounds only rarely; and no bending, kneeling, crouching, crawling, and

only rare squatting.  Dr. Barris concluded that Gonzales was disabled and unable to work.  Gonzales contends that the ALJ erred by disregarding this opinion and not according it proper deference.

In deciding how much weight to give a treating physician's opinion, an ALJ must first determine if the opinion is entitled to controlling weight.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  An opinion is so entitled if it is well-supported by the medical evidence and is consistent with other substantial evidence in the record.  *See id*.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (internal quotation marks omitted).

The ALJ did not give controlling weight to Dr. Barris's opinion because it was not supported by medical evidence and was inconsistent with the record.  He said that the opinion was based primarily on Gonzales's own reports of pain and not the objective medical evidence.  Gonzales asserts that the ALJ erred because he improperly discounted Gonzales's credibility while ignoring medical evidence.  We are not persuaded.  First, the ALJ did not reject Dr. Barris's opinion, he merely declined to give it controlling weight.  *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (distinguishing between denying controlling weight to a treating physician's opinion and completely rejecting it).  Second, the ALJ referred to Gonzales's self-reports of pain as the apparent foundation for Dr. Barris's opinion precisely because the opinion differed from the extensive medical evidence to which

the ALJ gave close examination. For example, the ALJ noted that, contrary to Dr. Barris's opinion about Gonzales's severe pain, Dr. Barris's own observations showed normal gait and normal neurological exam results, and he found that Gonzales exhibited only moderate back pain and a full range of motion in the knee. Dr. Moser, an examining physician, reports similar findings, and imaging showed only mild disc disease of the lower spine and a mild degenerative condition in the left shoulder. The ALJ reasonably found the evidence inconsistent with Dr. Barris's opinion that Gonzales was severely limited and hence properly did not accord it controlling weight.

B. Nonexamining Agency Physician

Dr. George Twombly, an agency physician who reviewed Gonzales's record in 2002, found that Gonzales was more capable than Dr. Barris stated. Gonzales argues that the ALJ erroneously "rejected" Dr. Barris's opinion "in favor of" the opinion of Dr. Twombly, because Dr. Twombly had access to only a small portion of the evidence available to Dr. Barris and the ALJ. Aplt. Br. at 22. We again note that the ALJ did not reject Dr. Barris's opinion at all, nor did he rely on Dr. Twombly's opinion "in favor of" Dr. Barris's. Instead, the ALJ found that the same record evidence undermining Dr. Barris's opinion supported Dr. Twombly's and thus gave greater weight to the latter's opinion. And although it is true that Dr. Twombly was privy to only an incomplete record, the ALJ specifically addressed this point in finding that the more recent record evidence failed to establish that Gonzales's

- 5 -

conditions had worsened since Dr. Twombly's review. The ALJ did not err in adopting the conclusion that Gonzales could still perform medium exertional work.

C. Credibility Finding

Gonzales argues that the ALJ's credibility finding is not supported by substantial evidence. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to that evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (alteration and internal quotation marks omitted). We refuse to reject the ALJ's finding.

The ALJ found that Gonzales was not credible because there was "little objective medical support" for many of his claimed ailments and there were inconsistencies in his testimony. Aplt. App., Vol. IIb at 303. For instance, although Gonzales testified to severe symptoms in his low back and shoulders, imaging results have shown little evidence of severe dysfunction. Regarding Gonzales's complaints of severe symptoms in his low back and legs due to lumbar radiculitis, the ALJ referred to the lack of imaging results showing nerve-root impingement and inconsistent results from straight-leg-raise testing. The ALJ also noted instances of Gonzales's noncompliance with treatment, including discontinuing prescribed medication for pain and depression, failing to show up for a stress test, and failing to follow recommendations for his diabetic condition. Finally, the ALJ identified

inconsistencies in Gonzales's statements, such as his testimony that he has been unable to grip even though Dr. Barris's and Dr. Moser's reports indicate no such complaints.

Gonzales contends that the ALJ erred in finding that medical evidence did not corroborate his reported levels of pain, especially with regard to the ALJ's finding that Gonzales did not have lumbar radiculitis. Gonzales asserts that the ALJ either ignored or improperly discounted "multiple objective findings in the record," including MRI evidence of a bulging disc in Gonzales's lumbar spine that touches a nerve root. Aplt. Br. at 25. But the imaging report notes that the disk bulge does not impinge on the nerve. Gonzales asserts that the results of the MRI mean that the nerve root contact is "*capable* of irritating the nerve and producing symptoms" and can provide a "medically probable explanation" for the positive results on straight-leg-raise testing. *Id*. (emphasis added). This, however, is only Gonzales's speculation that the contact is capable of producing the pain of which he complains; there is no supporting testimony or statement by a doctor. Because of the lack of objective evidence connecting the nerve-root contact with Gonzales's pain, and in light of the record as a whole, we cannot say that the ALJ's finding was contrary to substantial evidence.

Gonzales also argues that the ALJ erred by concluding that he has had only "'conservative'" treatment for his conditions and was noncompliant in taking medications, while ignoring that Gonzales's indigence was a factor. *Id*. at 26.

Gonzales states that Dr. Barris "repeatedly recommended" that he see an orthopedic surgeon but he was limited by his indigence and lack of medical coverage in pursuing such recommendations, facts which the ALJ did not properly take into account. *Id.* The ALJ did, however, acknowledge Gonzales's financial state before finding that it could not account for all of Gonzales's failures to refill prescribed medications and follow recommendations, a finding supported by the record. And contrary to Gonzales's argument, the ALJ never suggested that Gonzales's financial difficulties had no impact on his decision to forgo surgery. Thus it was reasonable for the ALJ to conclude that Gonzales was noncompliant in spite of financial limitations.

### D. Additional Evidence

#### 1. Administrative Res Judicata

Gonzales contends that principles of administrative res judicata bound the second ALJ to accept the first ALJ's findings from his 2001 hearing that he was unable to perform a full range of light work, was unable to perform his past work as a boiler operator, and did not have any transferable skills from prior work experience. At the 2008 hearing before the second ALJ, Gonzales's attorney asked that he consider the first ALJ's 2001 decision and evidence from his prior claim, but the second ALJ declined to do so. At the hearing Gonzales did not contend that res judicata applied. But he now asserts that the first ALJ's findings were in fact binding on the second ALJ even though the first ALJ did not find Gonzales disabled. Gonzales argues that applying res judicata necessitates a determination of disability

under "grid" Rule 202.06, 20 C.F.R. § 404, Subpart P, Appendix 2, because he turned 55 in 2006.

Res judicata may apply in a social security case when a previous determination is made about the claimant's rights "on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action." *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009) (nonprecedential order and judgment) (emphasis and internal quotation marks omitted); *see also* 20 C.F.R. § 404.957(c)(1); *id*. § 416.1457(c)(1). To support his preclusion argument Gonzales relies on *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987), *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and *Chavez v. Bowen,* 844 F.2d 691 (9th Cir. 1988). In these cases, however, the second ALJ reevaluated evidence already presented and adjudicated by the first ALJ. By contrast, in *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996), the court held that an ALJ's evaluation of the claimant's second application for benefits was "an independent consideration of her eligibility at the time of her second application." *Id*. It noted that even though the second ALJ concluded that the claimant was capable of medium work in spite of the first ALJ's finding that she was capable only of sedentary work, "[t]he time period was different, and a different outcome is not necessarily inconsistent." *Id*. The court reasoned that the first ALJ's findings were binding only on the time period of the claimant's eligibility during her first application and had no effect on the second application for

a later time period. *See id*.; *see also Hardy v. Chater,* 64 F.3d 405, 407 (8th Cir. 1995) (similar).

In this case Gonzales's second application involved a different, unadjudicated time period involving over five years of new evidence. Unlike *Lively*, *Drummond*, and *Chavez*, the second ALJ did not reevaluate evidence nor did he contradict the first ALJ's ultimate finding that Gonzales was not disabled. We need not decide whether in other circumstances the findings from a prior decision are binding on a subsequent ALJ.

2. Mental Impairment

Gonzales argues that the ALJ improperly failed to consider evidence of his mental limitations. He presented to the ALJ results of a 2001 psychological test that scored his full-scale IQ at 70. Listing 12.05C, which sets standards for disability based on mental retardation, requires a claimant to have an IQ of 60-70 "and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. Because the ALJ found Gonzales to have physical limitations, Gonzales asserts that he met the requirements of the listing. Because the ALJ did not consider evidence of Gonzales's IQ, he contends that there is reversible error.

As the Commissioner points out, however, Listing 12.05C requires not only the necessary IQ but "significantly subaverage general intellectual functioning with

deficits in adaptive functioning" manifested before age 22. *Id.* § 12.05. The record shows no evidence of impaired adaptive functioning manifested before age 22.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

Entered for the Court


Harris L Hartz
Circuit Judge