**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MIKE ALLEN,

      Plaintiff - Appellant,

v.

NANCY A. BERRYHILL,[*]
Acting Commissioner of Social Security,

      Defendant - Appellee.

No. 16-3316
(D.C. No. 5:16-CV-04028-JTM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

Mike Allen appeals pro se from the district court's judgment affirming the

Commissioner's denial of his application for supplemental security income.

Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

---

[*] In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the Acting
Commissioner of the Social Security Administration.

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Mr. Allen alleged in his application that as of October 9, 2013, he was disabled due to a back injury. His claim was ultimately denied by an administrative law judge (ALJ) at steps four and five of the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a)(4). The ALJ found that although Mr. Allen had several severe impairments (lumbar spine degenerative disc disease, bilateral degenerative joint disease, obesity), they did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1, that are so severe as to preclude employment. The ALJ then found that Mr. Allen had the residual functional capacity (RFC) to perform a limited range of work in the medium exertional category. Specifically, the ALJ determined that Mr. Allen could lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; stand and walk or sit about 6 hours in an 8-hour workday with normal breaks; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl. The ALJ also found that Mr. Allen should avoid concentrated exposure to jerking or bouncing motions, and that he would need to shift between standing and sitting as frequently as every half-hour but could do so without loss of productivity. With these limitations, the ALJ determined Mr. Allen could return to his past relevant work as a security guard. In the alternative, the ALJ concluded that Mr. Allen could perform other work existing in significant numbers in the national economy, including arcade attendant, storage facility rental clerk, and parking lot cashier. Accordingly, the ALJ denied Mr. Allen's application.

Mr. Allen submitted additional evidence to the Appeals Council, including a spinal MRI performed after the ALJ had issued his decision. The Council determined the evidence would not have changed the outcome and denied his request for review. The district court affirmed, and Mr. Allen appeals.

## II. DISCUSSION

Our task in this appeal is limited to determining whether substantial evidence supports the agency's factual findings and whether the agency applied the correct legal standards. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted).

## A.     Substantiality of the evidence

Mr. Allen raises only general challenges to the substantiality of the evidence supporting the ALJ's decision, claiming that "[t]he medical record speaks volumes" and he has "no confidence in the [ALJ's] decision." Aplt. Opening Br. at 2, 3. He also points to the MRI report and claims "there is no argument in presenting the facts to the court[:]" he cannot walk for more than 20 minutes, and he cannot sit in one position or stand for more than an hour. Reply at 1–2.[1] He summarily claims that he cannot climb ropes or scaffolds, as the ALJ found, and he newly complains that he

---

[1] We have construed Mr. Allen's "Motion to Approve Plaintiff's Request for SSDI" as his reply brief.

3

lacks flexibility in his right hand. He also states that he cannot afford regular epidural injections or physical therapy because he has no income or health insurance.

Mr. Allen fails to support these arguments with any citation to the record or legal authority. Even pro se litigants are required to do this much. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840–41 (10th Cir. 2005). Nonetheless, we have reviewed the medical evidence. Our review confirms that the ALJ accurately recounted the medical evidence in his decision, and we have uncovered nothing suggesting that there was not substantial evidence to support the ALJ's determination of Mr. Allen's RFC or the ALJ's findings concerning the jobs Mr. Allen could perform despite his limitations.

Mr. Allen testified that his low-back injury resulted from moving more than 20 heavy bags of concrete.[2] He received chiropractic treatment soon after, which afforded him some relief, and he was given a lumbar support, which he did not wear during the day because it was too hot. He was also advised to stretch and use ice at home. R. at 397. A few weeks later he was seen at the Hunter Health Clinic for severe back pain. *Id.* at 491. He had a normal gait, no focal deficits, intact sensation, and symmetric reflexes. *Id.* at 492. He was assessed with lumbago, prescribed

---

[2] Mr. Allen faults the ALJ for stating the injury occurred after moving only three heavy bags. But the number of bags Mr. Allen moved is immaterial to the disability issue, which concerns what he can still do despite his limitations. *See* 20 C.F.R. § 416.945(a)(1) (RFC "is the most [a claimant] can still do despite [his] limitations"). Hence, any error by the ALJ regarding the number of bags was harmless. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (recognizing that "a mere scrivener's error" does "not affect the outcome of [a social security] case").

prednisone and baclofen, and advised to stretch, rest, and use ice or heat as needed. *Id.*

Mr. Allen next met with a consultative examiner, James Henderson, M.D., in March 2014, at the Commissioner's request. *Id.* at 506–09. On examination, Mr. Allen's walking was unimpaired, but he had limited range of motion in the lumbar spine, and crepitation in both knees with full range of motion. *Id.* at 508. Dr. Henderson found no evidence of inflammatory change, erythema, hyperthermia, or paraspinous muscle spasm. *Id.* at 507–08. Mr. Allen's motor and sensory functions were intact, his reflexes were symmetrical, and his gait and station were stable. *Id.* at 508. He had no difficulty getting on and off the examination table, no difficulty with heel and toe walking, and mild difficulty squatting and arising from the sitting position. *Id.* A radiologist's report made the following observations: Mr. Allen's right knee had no acute abnormalities; the joint spaces appeared adequately maintained with no discernible marginal spurring, eburnation, or erosive change; there was no indication of "a joint effusion or intra-articular loose body"; and the surrounding soft tissues were intact. *Id.* at 509. Regarding his lumbar spine, there was minimal spondylosis between T12 and L2 and at L3–4, but the vertebral height and alignment were satisfactory, and the remaining disc spaces appeared adequately maintained. *Id.* There were no abnormalities affecting the posterior elements or sacroiliac joints. *Id.*

Mr. Allen returned to the Hunter Health Clinic in June 2014 complaining that his back was "killing" him. *Id.* at 514. He rated his pain at 6/10 and reported that

5

ibuprofen and muscle relaxers effectively relieved his symptoms. *Id.* He was in no acute distress, and his gait was normal, but he had impaired range of motion bending forward and backward. *Id.* at 515. He was tender to palpitation over the paraspinal muscles bilaterally but not over the spinous processes, and a straight-leg raising test was negative. *Id.* Other findings were essentially unremarkable. He was diagnosed with low back pain, muscle spasm, and obesity. He was prescribed ibuprofen for pain and inflammation, and tizanidine for muscle spasms, both as needed. *Id.* He was told to lose weight, stretch, exercise lightly, use ice or heat as needed, and use a supportive pillow and mattress. *Id.*

Mr. Allen's next follow-up for back pain occurred in March 2015, when he had a lumbar-spine x-ray for what he said was increasing back pain. *Id.* at 524. The x-ray showed normal vertebral body height and alignment; well-maintained disc spaces; and some anterior osteophyte formation. *Id.* The impression was spondylosis deformans without fractures or acute abnormalities. *Id.*

A few weeks later, Mr. Allen followed up with his primary care provider at the clinic. *Id.* at 526–29. He reported that if he wakes up around 6:00 or 7:00 a.m., his lower back hurts and he is fatigued, but he is better if he sleeps until 10:00 a.m. *Id.* at 526. He said if he lifts objects more than 25 or 30 pounds, his back pain worsens for three or four days. *Id.* He was using ibuprofen three or four times a week and tizanidine even less unless he exacerbates his symptoms, in which case a few days on tizanidine returns him to baseline. *Id.* He complained of some numbness in his pelvis but denied any sciatica, radiculopathy, or loss of bowel or

6

bladder control.  *Id.*  Except for decreased range of motion with forward flexion and extension due to pain, the examination of his back was unremarkable:  his range of motion was normal with right and left lateral rotation and flexion, there was no pain with palpation to spinal processes, and a straight-leg-raise test was negative.  *Id.*  The assessment was lumbar spondylosis, low-back pain, and low-back muscle spasm. *Id.* at 529.  He was referred to physical therapy, received a refill on his medications, and encouraged to do light stretching and exercises, to use ice or heat, and to rest his back.  *Id.*  In April, Mr. Allen went for a physical therapy evaluation, where it was noted that he had minimal or no loss of movement in his lumbar spine, his upper-extremity range of motion was within functional limits, and he had complete independence in mobility.  *Id.* at 571–72.  He was given exercises to perform, *id.* at 553, and a suggestion to join a YMCA for exercise, *id.* at 574, but in May he decided that the exercises were not effective and that he would return to his medical doctor for an orthopedic referral, *id.* at 569.

In June 2015, Mr. Allen went to the emergency room for his back pain.  *Id.* at 537–50.  He thought his medications ("Motrin, Flexeril, and aspirin") were causing chest pain and palpitations.  *Id.* at 537.  He asked for an MRI and a referral to a specialist.  Examination revealed midline tenderness to the lower lumbar area without skin changes.  *Id.* at 538.  He was released to home, referred to a neurological surgeon, and prescribed hydrocodone with acetaminophen.  *Id.* at 544, 546–47.

At the hearing, Mr. Allen said he could probably do an office job now using his education, *id.* at 136, could probably do a security job that involved only sitting

7

and watching a monitor, *id.* at 137, and could sit for two hours if he was able to move around in his seat, but then he would have to get out of the chair, *id.* at 149. He was taking hydrocodone and acetaminophen twice a week on average, but he was concerned about side effects, in particular the chest pain he had experienced while on other medication. *Id.* at 138. He said he used a knee brace sometimes, but it was not prescribed for him, *id.* at 139, and he was not using any assistive devices at time of hearing, *id.* at 140. He also said he uses a back support he got from his chiropractor, *id.*, and he had not used cold therapy because "there's too much to it," *id.* at 141. He reported an ability to attend to a variety of activities of daily living, albeit with some limitations.

As noted, the ALJ accurately described this medical evidence and Mr. Allen's testimony. In reaching his decision, the ALJ also considered the April 2014 report of a non-examining consulting physician, CA Parsons, M.D. Dr. Parsons reviewed the medical evidence and opined that due to his back injury, Mr. Allen could perform work at the medium exertional level; could stand and/or walk with normal breaks for 6 hours in an 8-hour workday; could sit with normal breaks for 6 hours in an 8-hour workday; could frequently climb stairs, stoop, and kneel; and could occasionally crouch and crawl. *Id.* at 192–93. The ALJ gave Dr. Parsons's opinion substantial weight for the exertional findings because they were supported by the record, but found other limitations where Dr. Parsons had found none: Mr. Allen's knee condition limited him to only occasional stair climbing, kneeling, and stooping; he

8

needed to avoid bouncing and jerking; and he needed to be able to shift positions as frequently as every half hour.

In September 2015, after the ALJ had issued his decision, Mr. Allen had an MRI of his lumbar spine. *Id.* at 582–83. The MRI confirmed multilevel degenerative disc disease most pronounced at the L1-L2 level; a diffuse L1-L2 disc bulge with a disc spur causing mild central canal narrowing and mild left neuroforaminal narrowing; and mild to moderate neuroforaminal narrowing bilaterally at L4-L5 due to disc bulge and spurs. *Id.* at 583. Mr. Allen submitted the MRI results to the Appeals Council along with an undated letter from a Doctor Roy stating that Mr. Allen was a good candidate for spinal decompression therapy. *Id.* at 587.

Given the generally mild or moderate medical findings, the effectiveness of medications used only as needed, the weight afforded to Dr. Parson's opinion, and Mr. Allen's testimony, there was substantial evidence for the ALJ's decision. *See White v. Barnhart*, 287 F.3d 903, 909–10 (10th Cir. 2002) (effectiveness of medications is appropriate consideration in evaluating claimant's claim of disabling pain); 20 C.F.R. § 416.929(c)(3)(iv) (same). Mr. Allen appears to be under the impression that evidence confirming the mere existence of his impairments, coupled with his allegation that pain has prevented him from working since the injury, is sufficient to entitle him to a favorable decision on his application. It is not. *See* 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). The disability inquiry turns on what he can still do despite his impairments and the pain they cause. *See Brown v. Bowen*,

801 F.2d 361, 362–63 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." (internal quotation marks omitted)).

No one doubts that Mr. Allen has severe impairments that cause him pain. The ALJ said as much. And while the MRI report is consistent with those findings, nothing in it suggests that Mr. Allen's back impairment limits him more than the ALJ found. Nor does his claimed inability to pay for epidural injections or physical therapy alter our conclusion. Mr. Allen has not argued that he cannot afford the medication that was prescribed for, and effectively controlled, his pain, and a lack of funds was not the reason he gave for discontinuing physical therapy such that we might question any reliance the ALJ may have placed on Mr. Allen's decision to do so. *See Threet v. Barnhart*, 353 F.3d 1185, 1190–91 n.7 (10th Cir. 2003) ("[I]nability to pay may provide a justification for a claimant's failure to seek treatment."). Finally, Mr. Allen did not base his benefits claim on any problems with his right hand, and no such problem is evident in the record the agency considered. In sum, we cannot say the evidence supporting the ALJ's decision was insubstantial.

## B. Asserted procedural errors

Mr. Allen does advance specific challenges to the handling of his case. In one, he claims that at an initial hearing, the ALJ asked him to waive his right to an attorney. The ALJ did no such thing. At the first hearing, Mr. Allen appeared without counsel and asked for a continuance in order to obtain representation.

10

*See* R. at 154.  The ALJ granted that request but said it was "a onetime thing. . . . [A]t the next hearing if you're without representation, we can go ahead and go forward at that time."  *Id.* at 154–55.  The ALJ then summarized Mr. Allen's "right to be represented by an attorney or a non-attorney" and his "right to proceed without a representative."  *Id.* at 155.  The ALJ then said, "Now prior to proceeding with the hearing, I'll ask you to sign a form indicating that you understand your rights and in this instant, since you've indicated that you would like a continuance, the form indicates that you understand that this is a onetime thing . . . and the next time we go ahead and go forward."  *Id.* at 155–56.  The ALJ advised Mr. Allen that "it would be in [his] best interest to obtain representation sooner rather than later."  *Id.* at 161.

We see nothing improper in the ALJ's handling of the withdrawal of Mr. Allen's first attorney.  First, we emphasize that, contrary to what Mr. Allen appears to think, he did not have a constitutional right to counsel, but only an administrative right to appoint a representative, attorney or not.  *See* 20 C.F.R. § 416.1505(a)–(b) (stating that a claimant "may appoint as [his] representative . . . any attorney in good standing" or "any person who is not an attorney" who is qualified under the regulation); *Banta v. Chater*, No. 95-6457, 1996 WL 477298, at *1 (10th Cir. Aug. 22, 1996) (unpublished[3]) ("There is no constitutional or statutory right to competent counsel in Social Security proceedings[.]"); *cf. MacCuish v. United States*, 844 F.2d 733, 735 (10th Cir. 1988) (Sixth

---

[3] Consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1, we cite to our unpublished decision in *Banta* only for its persuasive value.

11

Amendment right to counsel does not apply to civil matters.)  Second, even if the ALJ's remarks were somehow improper or misleading, Mr. Allen was able to obtain counsel to represent him at the second and final hearing before the ALJ. Accordingly, any impropriety or misinformation in the ALJ's remarks ultimately caused Mr. Allen no harm.

Mr. Allen also questions the ALJ's qualifications, stating that the agency "promotes ordinary staffs to ALJ positions without scholar[ly] credentials."  Aplt. Opening Br. at 3.  But we are not empowered to judge whether the agency has hired qualified ALJs; our jurisdiction is limited to reviewing the ALJ's decision. *See* 42 U.S.C. 405(g) (providing for judicial review of "final decisions of the Commissioner"); *Brandtner v. Dep't of Health & Human Servs.*, 150 F.3d 1306, 1307 (10th Cir. 1998) (§ 405(g) is "sole jurisdictional basis in social security cases").

Third, in his docketing statement, Mr. Allen suggests the Commissioner had his district court case improperly transferred from Topeka, Kansas, where he filed it, to Wichita, Kansas.  Our review of the district court's docket indicates that although Mr. Allen designated Topeka as the place for trial, the Commissioner filed nothing to affect whether the case was assigned to a judge in Wichita, and no trial ever occurred.  Consequently, we are hard pressed to find any impropriety.

Finally, we note that Mr. Allen filed with this court a "Summary Judgment Motion," asking that we grant him summary judgment in this matter.  Requesting summary judgment is not appropriate in an appeal from the denial of social security benefits.  In any event, we have concluded that the denial of benefits should be

12

affirmed. Therefore, although we have considered the arguments set forth in the motion, we deny it as moot.

**C.      Ancillary matter**

Mr. Allen has filed a "Motion on Patient's Constitutional Rights to Confidential Medical Care" (Motion) alleging "that a Social Security affiliate is making contact with [his] healthcare providers to influence the quality of medical care [he] receive[s] and to alter the language of [his] medical reports." Motion at 1. He asks us to "stop this source of distraction both with [his] care providers as well as [his] representatives." *Id.* at 3. As noted above, our jurisdiction in this appeal is limited to reviewing the ALJ's decision. We therefore deny the Motion for lack of jurisdiction.

### III. CONCLUSION

The judgment of the district court is affirmed. Mr. Allen's Summary Judgment Motion is denied as moot, and his Motion on Patient's Constitutional Rights to Confidential Medical Care is denied for lack of jurisdiction.

Entered for the Court

Gregory A. Phillips
Circuit Judge

13